In re Orton.

*January 20 — March 14, 1882.*

DISBARRING ATTORNEY. *(1) Appealable order. (2) How attorney to be notified of charges. (3) Court may act on its own motion.*

1. An order of the circuit court forever disbarring an attorney and prohibiting him from practicing law in the courts of this state, *held* appealable under subd. 2, sec. 3069, R. S., as a final order affecting a substantial right made in a special proceeding.
2. Where the proceeding to disbar an attorney is by order to show cause, the charges against him should clearly appear in the order itself, or in some instrument appended thereto or (at least) on file; and even when the charges are to be supported by pleadings filed by such attorney, the charges themselves should be distinctly specified.
3. The circuit court may properly, *on its own motion*, require an attorney to show cause why he should not be disbarred, when pleadings filed by him appear to require an investigation of that character.

APPEAL from the Circuit Court for *Milwaukee* County. The case is sufficiently stated in the opinion.

For the appellant there was a brief by *D. H. Johnson,* and oral argument by *Mr. Johnson* and *Wm. F. Vilas.*

*H. M. Finch, contra.*

COLE, C. J. This is an appeal from an order of the circuit court of Milwaukee county, which directs that the appellant be forever disbarred from the right to practice law in the courts of this state, and also directs that his name be stricken from

the roll of attorneys of said circuit court. A preliminary objection is taken by the learned counsel who appears here to sustain the correctness of the order, that it is not appealable. He insists that the proper remedy to restore a disbarred attorney to his rights and privileges is by *mandamus* to the court disbarring him. This point was not seriously urged as an objection to our reviewing the order, but it must be considered. It appears to us that the order may well be held appealable under subd. 2, sec. 3069, R. S., as being a final order affecting a substantial right, made in a special proceeding. That an order prohibiting an attorney from practicing law, which practically deprives him of the means of supporting himself and family — which blasts all his prospects for professional fame and eminence, and leaves a stain on his good name and character,— is an order affecting a substantial right, is a proposition too plain for discussion. There may be a class of cases where an attorney is disbarred as a punishment for contemptuous language or conduct in the presence of the court, where the proceedings would be treated as *quasi* criminal (see *In re Kelly*, 59 N. Y., 596), and where the rule laid down in bastardy cases (*State v. Mushied*, 12 Wis., 561, and *State v. Jager*, 19 Wis., 235), or in criminal contempts (*In re Murphey*, 39 Wis., 286), would apply. But we think these decisions are not strictly in point. This question was considered in the *Eldridge Case*, 82 N. Y., 161, where a similar order was held appealable. In that case a distinction is made between proceedings for a contempt occurring in the presence of the judge, where the facts constituting the offense are certified by him, and a case of professional misconduct out of the immediate presence of the court, where the actual truth is a matter of evidence. In the latter case the court affirms its right to review the order on appeal. The cases of *Ex parte Bradley*, 7 Wall., 365, and *Ex parte Robinson*, 19 Wall., 511, which are relied on by counsel to sustain the position that *mandamus* is the proper remedy to restore a disbarred attorney to

his rights and privileges, are commented on in the *Eldridge Case*, and the decisions shown to be inapplicable. The language of the appeal statute above cited clearly embraces this order; and we see no sufficient reason for holding that it cannot be reviewed on appeal. See *Witter v. Lyon*, 34 Wis., 564; *In re Cooper*, 22 N. Y., 67; *In re Percy*, 36 N. Y., 651; *In re Gale*, 75 N. Y., 526.

But another question of practice is raised by the counsel for the appellant, which is of much practical importance. He claims and insists that the whole course of procedure adopted and pursued in this case was irregular and absurd to the last degree, and that the order should be reversed on that ground. The proceeding was instituted in this manner: In August last, when the circuit court of Milwaukee county was in session, the attention of the circuit judge was called to the pleadings in a case pending in that court, in which one Russell Wheeler was plaintiff and the appellant was defendant. The pleadings on file consisted of a complaint and a verified answer. At the same time, it is admitted, there was read what purported to be a copy of a copy of an amended answer in the same case, which had been served by *Mr. Orton* on Wheeler's attorneys, and which they had returned to him, with their reasons for not accepting service thereof. This copy of a copy of the amended answer was filed. Thereupon the court, on its own motion, made an order requiring the appellant to show cause on a day named, at the opening of court on said day, why his license as an attorney should not be revoked and annulled, and his name stricken from the roll of attorneys, and he be disbarred from longer practicing the profession of law. The clerk was directed to serve a true and certified copy of the order on *Mr. Orton* within three days from its date. The order specifies no charges whatever, nor any misconduct on the part of *Mr. Orton*, to which he was called upon to answer. On the hearing of the rule *Mr. Orton* moved to vacate the order, because it had been improvidently granted — there being no

charges specified as the foundation of the same, — and because no complaint or charges of any kind had been made against him. This motion was denied, and other steps were taken.

It is very correctly remarked by appellant's counsel, that the practice in proceedings of this kind is not prescribed by statute nor regulated by rules of court. But still that certain general rules and principles apply to it cannot be doubted. One of these principles, which is axiomatic in the law, would seem to be this: An attorney who is proceeded against for misbehavior in his profession, is certainly entitled to know the nature and ground of the accusation made against him. If charges of professional misconduct are made, common justice requires that he should know just what they are, and have a full opportunity to meet them. Therefore, specific, distinct, special charges should be clearly made, in some form and in some manner, before he is called upon to make his defense. "This power of removal from the bar is possessed by all courts which have authority to admit attorneys to practice. It is a power which should only be exercised for the most weighty reasons, such as would render the continuance of the attorney in practice incompatible with a proper respect of the court for itself, or a proper regard for the integrity of the profession; and except where matters occurring in open court, in the presence of the judges, constitute the grounds of its action, the power of the court should never be exercised without notice to the offending party of the grounds of the complaint against him, and affording him ample opportunity of explanation and defense. This is a rule of natural justice, and is as applicable to a case where a proceeding is taken to reach the right of an attorney to practice his profession, as it is when the proceeding is taken to reach his real or personal property." *Bradley v. Fisher*, 13 Wall., 335, 354.

The order to show cause, as we have said, stated no charges or grounds of complaint. It did not even specify what things in the verified or amended answer *Mr. Orton* was called upon

to explain, justify or deny.   It is said that no formal charges
of professional misconduct were necessary, because Mr. *Orton*
had shown, in his answer in the *Wheeler Case*, that he had
been guilty of acts which rendered him utterly unworthy to
be a member of the bar.   But what were those acts or things
which established his unfitness to practice law?   The character
of those answers will deserve notice by and by.   It is sufficient
now to say that they contain many allegations and statements
relating to different transactions.   Mr. *Orton* was entitled to
know on what particular acts or things stated in those answers
he was to be tried.   No better illustration of the necessity of
requiring specific charges of misconduct to be made could be
afforded than the history of this case.   The circuit judge, in
the final order disbarring Mr. *Orton,* states that he does so
for substantially these reasons: (1) That he had been guilty
of unprofessional conduct in advising Russell Wheeler how
to kill a man and be justified in the law, as appears from his
answer in the *Wheeler Case;* and (2) that it appeared from the
same answer that Mr. *Orton* had been guilty of subornation
of perjury, or some offense of that nature, in preparing for
the defense of said Wheeler against the charge of murder.
The learned counsel who argues in favor of the correctness of
the order, does not rely on these things alone to sustain it, but
he says there are other matters stated in the answers which
fully justify the expulsion of Mr. *Orton* from the bar.   He
refers to what is said by Mr. *Orton* in his original answer
about furnishing Mr. Wheeler with money for the purpose of
gambling; also to his aiding Wheeler in placing his property
beyond the reach of creditors, and other things.   Now, to our
minds, this forcibly demonstrates the wisdom and necessity of
having distinct and specific charges made in some proper way,
in a proceeding which may result in such serious consequences
as striking the name of an attorney from the rolls and depriv-
ing him of the right to practice his profession; for Mr. *Orton*
might well complain, as he did, that he did not know what

charges founded on his answers he was called upon to explain and justify. The learned circuit court expels him on one ground, and learned counsel say he might properly be disbarred on other grounds and for other things stated in his answers. Where the proceeding is by rule, as in this case, the order should state the substance of the charges of unprofessional conduct, so that the attorney may know precisely what he is called upon to meet. This practice should be observed even where the order or rule to show cause is founded upon pleadings and records before the court. In the order itself, or in some instrument appended to it, the charges should be specified, or, at all events, they should be drawn up and filed before the attorney is called upon to make his defense. "This is a rule of natural justice, and should be equally followed when proceedings are taken to deprive him of his right to practice his profession as when they are taken to reach his real or personal property; and such has been the general, if not the uniform, practice of the courts of this country and of England. There may be cases, undoubtedly, of such gross and outrageous conduct in open court on the part of the attorney as to justify very summary proceedings for his suspension or removal from office; but even then he should be heard before he is condemned." *Ex parte Robinson, supra,* 512. To be heard, he must, of course, know what he is to answer.

In *Ex parte Cole,* 1 McCrary, 406, and *People v. Pearson,* 55 Cal., 472, the proceedings were by information, wherein the accusations or charges were fully and clearly stated. In *In re Wool,* 36 Mich., 299, the order to show cause was based upon a decree in equity, which decree rested on a fraud charged to have been practiced by the attorney. The charges of fraud were set forth in the bill filled against the attorney, and constituted the only basis of the action. It does not appear that any objection was taken that the charges were not made in a sufficiently formal and specific manner. In *Strout v. Proctor,* 71 Me., 288, charges and specifications of misconduct were

made as the foundation of. the rule to show cause.  In *In re Percy, supra*, the order to show cause was based upon the papers presented to the court, which were served upon the attorney, and the order specified the charges.  What practice was adopted in *In re Gale, supra*, it is impossible to determine from the case as reported.  I have been unable to find the case in the reports of the supreme court.  In *In re Eldridge, supra*, we infer, the charges of misconduct were set forth in the affidavits and papers upon which the proceedings were instituted.  Certainly the certified copy of the order to show cause, with which we are favored, states that he was guilty of misconduct as an attorney in this, viz.:  " Subornation of perjury of witnesses produced by him on the hearing " of the probate of a certain will before the surrogate.  The court regarded these affidavits and papers as performing the office of a pleading, and presenting the issue to be tried.  But if there were no adjudged cases to sustain our view as to the proper practice in cases of this nature, still we should say, upon general principles applicable to all cases, that specific and distinct charges of professional misconduct should be clearly made in some proper form before the attorney is called upon to show cause why he should not be disbarred.  Mr. Weeks, in his work on Attorneys, says: " The practice in the English and American courts is for the court to issue a rule upon the attorney, reciting the substance of the information or charges against him, and requiring him to show cause why he should not be stricken from the roll. . . . Specific and pertinent charges must be made, and judgment entered on the process, otherwise he cannot be suspended or removed."  Page 155, § 83.  In a case of this importance we are clearly of the opinion that some such practice should be followed.

The fact that the circuit court, on its own motion, granted the order to show cause, requires no comment.  It was the duty of the circuit judge, on his attention being called to the pleadings in the case of *Wheeler v. Orton*, pending before

him, to issue such an order if he thought there was anything in the answers of *Mr. Orton* which the interest of the public or the integrity of the profession required should be investigated. Courts institute these proceedings on their own motion when papers are presented showing that there are probable grounds for believing that attorneys have been guilty of acts of misconduct in their practice which render them unfit longer to be members of the bar. *Anon.*, 22 Wend., 656; *In re Peterson*, 3 Paige, 510; *In re Brewster*, 12 Hun, 109. But, as we have said, the order properly should have stated what acts of misconduct or what things in his answers *Mr. Orton* was called upon to defend or explain.

We feel it to be our duty to make some further observations on two points before taking leave of the case. And first as to the merits. On showing cause *Mr. Orton* read and filed his affidavit in explanation of certain matters stated in his original and amended answers. If the answers, with the affidavits explaining the same, are read and considered together — as, of course, they must be on this inquiry,— we think they fail to sustain the conclusion of the learned circuit judge, that *Mr. Orton* had been guilty of the gross misconduct of advising Mr. Wheeler how to kill a man and be justified in the law, or that he had been guilty of the unprofessional misconduct of subornation of perjury, or anything of the kind. It is needless to observe that such grave charges, which, if true, would not only justify the expulsion of *Mr. Orton* from the bar, but would render him liable to severe punishment under the penal law, should be established by clear and satisfactory evidence, and cannot rest in doubtful and uncertain inferences. We do not propose to go into any analysis of the answers, either with or without the aid of the explanatory affidavit. Suffice it to say that they entirely fail to sustain the conclusions or inferences which the learned circuit judge drew from them.

The able and intelligent counsel who argued this case for the appellant, did not attempt to defend or justify the character of

the answers as pleadings; and his silence in that regard reflects credit upon his candor and his high standing at the bar. The answers as pleadings would be absolutely indefensible in any tribunal of justice. They contain matters which are not only impertinent and improper as constituting any defense to the action, but which are outrageously indecent and scandalous. There is no justification or excuse for placing such reprehensible pleadings on file, which derogate from the dignity of courts and are contrary to all honorable practice. If the circuit judge had directed these answers to be stricken from the files, and had administered a severe reprimand to the attorney who drew and placed them there, he would have treated the answers and their author as they deserved. It is painful to comment on such things, but the dignity of the court and the honor of a noble profession require it should be done. It is inconceivable how an old, able and experienced attorney, who generally has such a correct appreciation of the high duties and morality of his profession, could so far forget himself as to draw up and place on file answers which contain such scandalous and reprehensible things. It is to be hoped that these pleadings will never be followed as a precedent by any attorney of the Wisconsin bar.

*By the Court.*— The order of the circuit court is reversed.

ORTON, J., took no part.