STATE, Plaintiff, vs. CANNON, Defendant.

*September 14—September 26, 1928.*

*Spencer Haven* of Hudson, special counsel for the State Bar Commissioners.

*William A. Hayes* of Milwaukee and *Henry S. Lockney* of Waukesha, for the defendant.

A brief was also filed by *Geo. B. Hudnall, Frank T. Boesel,* and *Edwin S. Mack,* all of Milwaukee, as *amici curiæ.*

The following opinion was filed October 9, 1928:

OWEN, J. This is a proceeding instituted in this court upon the complaint of the State Bar Commissioners for the disbarment of Raymond J. Cannon. A motion was made to dismiss the proceeding on the ground that the court was without jurisdiction to entertain the same. The motion was denied by order of the court dated September 26, 1928, and it will be the purpose of this opinion to state the reasons therefor.

For many years we have had a statutory enactment vesting exclusive power in this court to admit attorneys. The practice thus declared has been followed. Prior to the enactment of ch. 314, Laws of 1927, the statute declared that proceedings for the disbarment of attorneys should be tried in the circuit court in some circuit adjoining the circuit in which the accused attorney resided. The practice thus declared was also followed. By ch. 314, Laws of 1927, it was provided that proceedings for the disbarment of attorneys should be brought exclusively in this court.

By sec. 3, art. VII, of the constitution it is provided that "The supreme court, except in cases otherwise provided in this constitution, shall have appellate jurisdiction only," and by sec. 8 of the same article it is provided that "the circuit courts shall have original jurisdiction in all matters civil and criminal within this state, not excepted in this constitution, and not hereafter prohibited by law." No provision of the constitution in terms vests this court with original jurisdiction over proceedings of this character, and it is contended by the defendant that it is beyond the power of the legislature to vest such jurisdiction in this court. If the jurisdiction of this court in the premises depends upon legisla-

tive authorization, there appears to be much of substance to the defendant's contention. However, before examining the power of the legislature in this respect, we deem it pertinent to investigate the source of the power so generally exercised by courts to admit and disbar attorneys. If it be determined that such power is not referable to written law, then it will be unnecessary to consider the potency of the legislation directing proceedings for the disbarment of attorneys to be instituted in this court.

In order that any human agency may accomplish its purposes, it is necessary that it possess power. The executive must have power to direct and control his business. The superintendent of the works must have power to direct his men. In order to accomplish the purposes for which they are created, courts must also possess powers. From time immemorial, certain powers have been conceded to courts because they are courts. Such powers have been conceded because without them they could neither maintain their dignity, transact their business, nor accomplish the purposes of their existence. These powers are called inherent powers. In *In re Court Room*, 148 Wis. 109, 121, 134 N. W. 490, it was said:

"The authorities, in so far as any can be found on the subject, are to the effect that a constitutional court of general jurisdiction has inherent power to protect itself against any action that would unreasonably curtail its powers or materially impair its efficiency. A county board has no power to even attempt to impede the functions of such a court, and no such power could be conferred upon it."

In *In re Bruen*, 102 Wash. 472, 172 Pac. 1152, the supreme court of Washington said:

"The inherent power of the court is the power to protect itself; the power to administer justice whether any previous form of remedy had been granted or not; the power to promulgate rules for its practice; and the power to provide process where none exists. It is true that the judicial

power of this court was created by the constitution, but upon coming into being under the constitution, this court came into being with inherent powers."

Among such powers is the power to preserve order, command obedience to its orders, and to punish for contempt: *State ex rel. Rodd v. Verage,* 177 Wis. 295, 187 N. W. 830; the power to appoint a janitor: *In re Janitor of Supreme Court,* 35 Wis. 410; to insist upon suitable quarters: *In re Court Room,* 148 Wis. 109, 134 N. W. 490; to inquire concerning the professional conduct of members of the bar: *Rubin v. State,* 194 Wis. 207, 216 N. W. 513; *People ex rel. Karlin v. Culkin,* 248 N. Y. 465, 162 N. E. 487.

Due to the fact that in this country the legislative department of government has presumed to prescribe qualifications for the admission of attorneys to practice law, some confusion exists as to whether the power to admit and disbar attorneys is inherent in courts. In *In re Goodell,* 39 Wis. 232, Chief Justice RYAN expressed the opinion that such power is inherent in the courts, although the question was not definitely decided. His language, however, has been quite generally accorded the force of precedent by courts and text-writers upon the subject. In that case the court denied the application of Miss Goodell for admission to the bar of this court because, it was said, a woman does not possess the natural qualifications essential to the practice of the law. Thereafter the legislature enacted that "No person shall be denied admission or license to practice as an attorney in this state on account of sex," and in 48 Wis. p. 693 will be found an opinion of the court written by COLE, J., admitting Miss Goodell to practice. Chief Justice RYAN dissented. In that opinion it was said:

"It may admit of serious doubt whether, under the constitution of this state, the legislature has the absolute and exclusive power to declare who shall be admitted as attor-

neys to practice in the courts of this state; or whether the courts themselves, as a necessary and inherent part of their powers, have not full control over the subject."

The majority of the court, however, without determining the power of the legislature, acted under the statute "in deference to the wishes of a co-ordinate branch of the government."

In *Vernon County Bar Asso. v. McKibbin,* 153 Wis. 350, 141 N. W. 283, the court, by Mr. Justice MARSHALL, said:

"It is unnecessary to discuss, or express an opinion, as to whether, prescribing the standard for admission to the bar, is a judicial or legislative function. The court has heretofore spoken on the subject and, whether right or wrong, is immaterial to this case. For myself, I indorse wholly what was said in *In re Mosness,* 39 Wis. 509. It will be found, in my judgment, fully vindicated in the several cases above cited and, in general, by all considerate discussion of the subject."

While in the cases cited the court refrained from holding that it had inherent power to admit and disbar attorneys, the language of the court left no doubt concerning the views entertained by the members of the court. In a number of cases in recent years, the court has assumed the power to disbar attorneys. *Application of State Board of Law Examiners,* 175 Wis. 66, 184 N. W. 379; *In re Richter,* 187 Wis. 490, 204 N. W. 492; *In re Pierce,* 189 Wis. 441, 207 N. W. 966; *State ex rel. Board of Law Examiners v. Podell,* 189 Wis. 457, 207 N. W. 709; *In re Stolen,* 193 Wis. 602, 214 N. W. 379, 216 N. W. 127. While the *Application of State Board of Law Examiners* and the *Pierce* and *Podell Cases* were to strike the names from the roll of attorneys of this court on the ground that they had procured their admission by fraud, which perhaps presents a somewhat different question, the *Richter* and *Stolen Cases* were cases in which attorneys were disbarred because of their misconduct as attorneys at law. Upon the challenge here made to the jurisdiction of this court to disbar attor-

neys in the exercise of original jurisdiction, we have closely
examined the power of this court in that respect which was
assumed in the other cases. We conclude that the power in
the other cases was properly exercised and that it cannot be
challenged here. It is not a power derived from the con-
stitution or the statutes of this state. It is a power which
is inherent in this court. It is a power that inheres because
attorneys at law are officers of the court. As such they are
privileged to invoke the jurisdiction of the court. In cer-
tain instances they have control over the writs of the court.
They are responsible in no small degree for the quality of
justice administered by the courts. They stand in a rela-
tion of trust and confidence to the courts. Every court must
have a bar. It is a necessary adjunct of a court. It is the
function of the bar to render assistance to the courts in
administering exact justice and not to frustrate the courts
in the accomplishment of this high purpose. A court must
in no small degree rely upon its bar. The bar should be
composed of those possessed of learning, character, probity,
and honesty. Under our form of government, where the
judicial constitutes an independent branch, the character of
those who stand in this relation to the court should be of
the court's choosing and under the supervision of the court,
and other branches of the government should not be per-
mitted to embarrass or frustrate judicial functions by the
intrusion of incompetent or improper officers upon the courts.
Courts will defer to reasonable legislative regulation, but this
deference is one of comity or courtesy rather than an ac-
knowledgment of power. This view is without doubt sup-
ported by the great weight of authority.

There are no statutes regulating the subject of disbar-
ment in certain states. In such states courts have proceeded
to exercise the power of disbarment and to invent their own
procedure. *Ex parte Cashin,* 128 Miss. 224, 90 South. 850;
*Lenihan v. Comm.* 165 Ky. 93, 176 S. W. 948, L. R. A.
1917 B, 1132. In so proceeding they acted under their in-
herent power and did not deem it necessary that jurisdiction

in such behalf should be conferred by statute or constitutional provision.

Indeed, such was the practice in this state until the enactment of ch. 84, Laws of 1903, which chapter constituted the first legislative enactment upon the subject of disbarment. Prior to that time disbarment proceedings were instituted upon an order to show cause issued by the judge of the circuit court of the county in which the accused was practicing. *In re Orton,* 54 Wis. 379, 11 N. W. 584; *In re O——,* 73 Wis. 602, 42 N. W. 221; *Flanders v. Keefe,* 108 Wis. 441, 84 N. W. 878. Prior to legislative action, our courts acted under their inherent power to disbar. The fact that since such legislation they have deferred to the practice prescribed by the legislature should cast no doubt upon their inherent power in the premises.

Among the great number of cases holding it to be an inherent power of courts to admit and disbar attorneys, merely deferring to statutory regulations on the subject, we content ourselves with citing the following: *Ex parte Secombe,* 19 How. 9; *Ex parte Garland,* 4 Wall. 333; *Randall v. Brigham,* 7 Wall. 523; *Hertz v. U. S.* 18 Fed. (2d) 52; *Danforth v. Egan,* 23 S. Dak. 43, 119 N. W. 1021; *Hanson v. Grattan,* 84 Kan. 843, 115 Pac. 646; *In re Day,* 181 Ill. 73, 54 N. E. 646; *In re Bruen,* 102 Wash. 472, 172 Pac. 1152.

It follows from what has been said that the statute confers no jurisdiction upon this court to entertain the present proceeding. That jurisdiction inheres in the court. It exists by virtue of the fact that this is a court, and the power sprang into being independent of any written law when the court was created.

The following opinion was filed November 1, 1928:

Crownhart, J. (*concurring in the result, but dissenting on the source of jurisdiction*). Proceedings were instituted

by the State Bar Commissioners in this court, pursuant to sec. 256.28, Stats. 1927, to consider a petition to disbar Raymond J. Cannon from the practice of law in this state. This court, acting under the statute, appointed a referee to take testimony. Counsel for Cannon then moved the court to dismiss the proceedings, on the ground that the statute is unconstitutional in that it attempts to give the court original jurisdiction in such cases, contrary to sec. 3, art. VII, Wisconsin constitution.

In the decision of the motion, the court, in its opinion, does not decide the question raised, but sustains its original jurisdiction on the ground that it has the inherent power to assume such jurisdiction. I quote from the opinion:

"It is not a power derived from the constitution or the statutes of this state. It is a power which is inherent in this court. It is a power that inheres because attorneys at law are officers of the court."

I think this cuts straight across the tap-root of constitutional government. It presents a grave constitutional question, and as said by Mr. Justice STORY of the United States supreme court:

"I am of opinion that upon constitutional questions the public have a right to know the opinion of every judge who dissents from the opinion of the court, and the reasons of his dissent." *Briscoe v. Bank of the Commonwealth,* 11 Pet. 257, 349, *350.

And to the same effect Mr. Justice MOODY, of the same court, in *Employers' Liability Cases,* 207 U. S. 463, 505, 28 Sup. Ct. 141, wherein he said:

"Where the judgment is a judicial condemnation of an act of a co-ordinate branch of our government, it is so grave a step that no member of the court can escape his own responsibility, or be justified in suppressing his own views, if unhappily they have not found expression in those of his associates."

If this court has inherent powers, then equally so may the other co-ordinate branches—the executive and the legisla-

tive—claim such powers. Each and all are above the constitution and have this mystical, undefined power, and each department may define such power for itself.

As was said in *Field v. People,* 3 Ill. 79, 80, 83, 84:

"To the parties immediately before the court the case is of some interest; but it derives its great importance from the fact that the fundamental principles of the government are drawn in question. . . . The constitution is a limitation upon the powers of the legislative department of the government; but it is to be regarded as a grant of powers to the other departments. Neither the executive nor the judiciary, therefore, can exercise any authority or power except such as is clearly granted by the constitution. . . . But upon the principle of our government that the sovereign power of the state resides in the people, and that only such powers as they have delegated to their functionaries can be exercised, where a claim of power is advanced by the executive, the question is, not whether the power in question has been granted to the people, but whether it has been granted to the executive; and if the grant cannot be shown, he has no title to the exercise of the power. . . . That other powers than those expressly granted may be, and often are, conferred by implication, is too well settled to be doubted. Under every constitution, the doctrine of implication must be resorted to, in order to carry out the general grants of power. A constitution cannot, from its very nature, enter into a minute specification of all the minor powers, naturally and obviously included in and flowing from the great and important ones which are expressly granted. It is therefore established as a general rule, that when a constitution gives a general power, or enjoins a duty, it also gives, by implication, every particular power necessary for the exercise of the one or the performance of the other. The implication under this rule, however, must be a necessary, not a conjectural or argumentative one. And it is further modified by another rule, that where the means for the exercise of a granted power are given, no other or different means can be implied, as being more effectual or convenient. . . . A power by implication can only be claimed as necessary to the exercise of one expressly granted. . . . But it has been settled

by the supreme court of the United States, that an enumeration of the powers of a department of the government operates as a limitation and restriction of a general grant."

Also see *Northwestern Nat. Bank v. Superior,* 103 Wis. 43, 45, 79 N. W. 54; *Nitka v. W. U. Tel. Co.* 149 Wis. 106, 110, 135 N. W. 492; *Outagamie County v. Zuehlke,* 165 Wis. 32, 35, 36, 161 N. W. 6; *Pauly v. Keebler,* 175 Wis. 428, 439, 185 N. W. 554.

Shortly after our constitution was adopted, when its spirit pervaded the state, this court was called upon to interpret it in a most momentous case,—a case of conflict between the executive and the court, with the court menaced by a military force at the command of the governor. This court then planted its jurisdiction on the constitution, with the ultimate power in the people. That was in 1855, in the case of *Attorney General ex rel. Bashford v. Barstow,* 4 Wis. 567. Mr. Justice COLE said:

"It could not, of course, be expected that in the examination of a question of constitutional law we should shut out of view entirely the nature and origin of our government. I propose to make but one remark upon it, in passing, for it seems to me that if our conceptions of our government be erroneous, our whole reasonings upon it cannot fail to be confused and unsound. I suppose we are living under a popular government, one which originated with the people— the rightful source of all political power. In the exercise of a natural right the people established our present constitution, delegating to it just so much power, and distributing it among the departments in just such a manner, as they thought necessary to insure domestic tranquillity and promote the general welfare. And as the people established the constitution, so they can alter, amend, or destroy it, and frame a new one whenever they may deem it necessary and proper. A particular mode of effecting such alterations has been agreed upon in the constitution, and it would likely be found most convenient to adhere to it. And the power which the people have not delegated to this government, or to the federal government, they have reserved to themselves.

Whether it is philosophically correct to say that in this country the people are sovereign, I will not stop to inquire, because it is not very material to the purpose. Some of the most accurate, eminent, and discriminating writers upon our political institutions say that sovereignty resides with the people. And I think, if it is to be found at all in our country, it will truly be found to be in the people. But I do not think that sovereignty is to be found in the departments of the government, as contended upon this argument. That is perfectly incomprehensible to my mind. A department of this government is nothing but a division of the powers of the government; nothing more, as I understand it. But sovereignty is not in one of these departments, nor in all of them.

"There is another feature of our government, and that a striking and distinguishing one, which must not be overlooked. This is not only a popular government, but it is a representative government—one where the officers are but the agents, and not the rulers, of the people; one where no man is so high as to be above the constitution, and no one so low as to be beneath its protection.

"Such, briefly, is my view of this government; its nature, origin, and character. And such, I had supposed, until this discussion, was the general and almost universal view of it; and that a man who should argue upon these propositions would argue without an opponent, for the reason, that here they are considered as political axioms." Pages 768, 769.

And Mr. Justice SMITH, concurring, said:

"But this whole matter has been settled by judicial construction, and were it not so, it would seem too plain to require argument for its elucidation. The theory of our government is, that all its powers are derived from the people. They are equal, and as equals have agreed that certain powers shall be exercised through agencies, and according to forms, by them prescribed, for the common good of the whole. The power thus created is the constitutional sovereignty. The power to frame the government, and to prescribe its forms and limitations is the ultimate sovereignty, and rests in the people. When the people have created their government, and defined its powers, and designated the agencies by which such powers should be executed, there is

then constituted what we call the state. Each one of the people is a component part of the state, but he is also a subject of the state. The state then becomes the organism through which, and in the name of which, all the functions of the government are to be performed. But no one department, or officer of the state, can claim to be the sovereign. There was a time in the history of the world when one man, intoxicated with despotic power, gave expression to tyrannical pride, and exclaimed 'L'etat, c'est Moi!' 'The state, I am the state.' But that man was the tyrant of France. He was not the constitutionally elected executive of this free state. That was the language of the seventeenth, not of the nineteenth century.

"Whenever the powers conferred by the constitution, of whatsoever character, are exercised, they are exercised by the state. It is the state acting through the agencies provided by the constitution. The writ of *quo warranto,* or rather the summons which issued upon the filing of the information, was not the writ of this court. It was not the writ of the justices, but was the mandate of the state. It was the state's writ, going in conformity with constitutional provision, to accomplish the purpose for which the constitution designed it, viz.: to inquire whether one of the offices created by the constitution had been usurped or invaded without legal warrant or authority." Page 787.

There is no thought here of inherent power outside the constitution. The court bottomed its power upon the constitution, which had been adopted by the voters of the state. That constitution was the efficient and only source of power.

I have always assumed that this court heretofore, in speaking of its "inherent" powers, used the expression to mean the "incidental" or "implied" powers within the constitutional grant of power to the court. I had never understood that this court ever heretofore had asserted power in excess of its constitutional powers. Incidental powers or implied powers, following the constitutional grant, are as much within the constitution as the express power in the grant. As so understood, I do not wish to be thought as criticising the decisions of this court in that regard, although

we are not bound by some of the extravagant statements sometimes used in opinions, not necessarily or properly a part of the actual decision.

The great English statesman, William E. Gladstone, said:

"As the British constitution is the most subtle organism which has proceeded from progressive history, so the American constitution is the most wonderful work ever struck off at a given time by the hand of man."

He saw clearly the distinction between the unwritten law of Great Britain and American government under a written constitution adopted by the American electorate, expressing and defining their rights. The former is subtle, vague, and uncertain; the latter is plain, expressed, and speaks the voice of the people. The written constitution does not express all powers in detail. That were not possible. The major powers are expressed, and flowing from the major powers are those necessarily implied to make the expressed grant effective. In creating this court the constitution granted to it certain expressed powers, and from them the court gets many implied powers which are necessary to carry out those expressed. But these implied powers are not the grounds of the decision of the court in the instant case. This is made clear by the court when it says the power is not derived from the constitution nor from the statutes. If such be the case the powers are undefined and undefinable. They are arbitrary powers to be used when and in the manner desired by the court. The court is the sole judge of its powers, without guide or compass. I would think that this court would not wish such arbitrary power, for arbitrary power begets arbitrary use or abuse of power.

Ever since the state has been organized under the constitution, the whole practice of the courts has been regulated by legislative acts. In 1858, following New York, the legislature of this state enacted a complete code of court practice, governing the judiciary. By the opinion of this

court we now are informed, in effect, that this great code of simplified practice was accepted by the judiciary through courtesy or comity, and that it may be cast aside at the will of the court. I think it a mistake to speak of the deference to be shown a co-ordinate department of government as courtesy or comity. Such deference is part of the law of constitutional construction. It is binding upon the courts as a uniform rule of construction. An act passed by the legislature will not be declared unconstitutional unless it is clear beyond a reasonable doubt that it is so. *State ex rel. Carnation M. P. Co. v. Emery,* 178 Wis. 147, 151, 189 N. W. 564, and cases there cited.

The constitution provided that the common law should here prevail, except as prohibited by the constitution, until changed by the legislature. Art. XIV, sec. 13, Const. At common law the legislature was supreme. The court's sole office was to construe the law.

"There is no court that has power to defeat the intent of the legislature when couched in such evident and express words as leave no doubt whether it was the intent of the legislature or no." 1 Black. Comm. 91.

But with the advent of constitutional government the courts took on a new dignity. They have power to construe the constitution by which the legislative and executive branches, as well as the judiciary, are bound by solemn oath. So under the constitution the courts, by construction, mark out the boundaries of the powers of each department of government. It is a great power, and we need not and may not look elsewhere for our authority.

As I have pointed out, it is an elementary rule of construction of our constitution that the executive and judicial departments have only such powers as the constitution grants to them, either expressly or by necessary implication, but that the legislature has all legislative powers not limited by the state or federal constitutions.

The public are interested in a special degree in the character, honesty, and efficiency of the attorneys who represent them as their agents in matters before the courts. Although under the constitution of Wisconsin a suitor may appear in person, or by any agent of his choice, in any court to prosecute or defend his case (art. VII, sec. 20), in practice he must rely on one learned in the law, and hence it has become the uniform practice for the litigants to employ only members of the bar to represent them. As the legislature directly represents the people, they have a right to expect the legislature to determine by law the qualifications of attorneys. It is true that the courts rely on the bar to aid them in their labors, but it must be remembered that attorneys are the agents of those who employ them. Hence the public are primarily interested in the character and qualifications of attorneys, and this is particularly true as the people are dependent in a large measure on the bar to protect them in their rights of sovereignty. A fearless and independent bar is of far greater importance to the common people than it is to the courts.

The first case to come before the court involving the question of admission to the bar was in 1875, entitled *"Motion to Admit Miss Lavinia Goodell to the Bar of this Court,"* 39 Wis. 232. In that case Lavinia Goodell was qualified for admission to the bar otherwise than as to sex. The court declined to admit her on the ground that the statutes applied only to men. Mr. Chief Justice RYAN wrote an extended opinion in which he discussed public policy, morals, and many other things aside from the statutes. It was his opinion that women were unfit by nature for the profession of law, and he expressed himself in this regard in very vigorous language, but the application was denied on the court's construction of the statutes. Among other things the Chief Justice said:

"The constitution makes no express provision for the bar. But it establishes courts, amongst which it distributes all the jurisdiction of all the courts of Westminster Hall, in

equity and at common law. *Putnam v. Sweet,* 2 Pin. 302. And it vests in the courts all the judicial power of the state. The constitutional establishment of such courts appears to carry with it the power to establish a bar to practice in them. And admission to the bar appears to be a judicial power. It may therefore become a very grave question for adjudication here, whether the constitution does not intrust the rule of admissions to the bar, as well as of expulsion from it, exclusively to the discretion of the courts.

"The legislature has indeed, from time to time, assumed power to prescribe rules for the admission of attorneys to practice. When these have seemed reasonable and just, it has generally, we think, been the pleasure of the courts to act upon such statutes, in deference to the wishes of a co-ordinate branch of the government, without considering the question of power."

And then, after criticising the statute of 1849, and inferentially the legislature that passed it, he said:

"But we will not anticipate such an unwise and unbecoming interference in what so peculiarly concerns the courts, whether the power to make it exists or not. In the meantime, it is a pleasure to defer to all reasonable statutes on the subject. And we will decide this motion on the present statutes, without passing on their binding force."

It will be seen that he refers to the constitutional power of the court, and not to any inherent power.

The next case to come before the court was *Motion to Admit Ole Mosness, Esq., to the Bar of this Court,* 39 Wis. 509. That case came up at the next term of court after the *Goodell Case,* and the court there held that the statute, ch. 50, Laws of 1855, which provided that foreign attorneys might be admitted to practice in the courts of this state on condition that other states admitted attorneys of this state under the same conditions, was unconstitutional, on the ground that attorneys were *quasi* state officers and must be residents of the state.

At the next session of the legislature following the *Goodell Case, supra,* an act was passed providing that "no person shall be denied admission or license to practice as an

attorney in any court in this state on account of sex." Sec. 2586, sub. 5, R. S. 1878. Thereupon Miss Goodell again applied for admission to the bar of this court. *In re Goodell,* 48 Wis. 693, 81 N. W. 551. In that case Mr. Justice COLE, writing the opinion of the court, said:

"It may admit of serious doubt whether, under the constitution of this state, the legislature has the absolute and exclusive power to declare who shall be admitted as attorneys to practice in the courts of this state; or whether the courts themselves, as a necessary and inherent part of their powers, have not full control over the subject. It was said by the Chief Justice, on the previous application, that it was a very grave question whether the constitution does not intrust the rule of admissions to the bar, as well as of expulsion from it, exclusively to the discretion of the courts."

And then the court decided that "waiving for the present the question whether or not the courts are vested with the ultimate power under the constitution of regulating and determining for themselves as to who are entitled to admission to practice," out of deference to the legislative act, Miss Goodell should be admitted to the bar, Mr. Chief Justice RYAN dissenting without writing an opinion.

It will be seen from the above that while the court spoke of the necessary and inherent part of its powers, it used the term with reference to the powers derived from the constitution; in other words, it was speaking of its implied powers.

Then followed *In re Orton,* 54 Wis. 379, 11 N. W. 584, which involved a case of discipline of an attorney in the circuit court for Milwaukee county, and the appealability of the order of disbarment. This court held that the order was appealable under sub. 2, sec. 3069, R. S. 1878, as being a final order affecting a substantial right, made in a special proceeding. The court there said:

"That an order prohibiting an attorney from practicing law, which practically deprives him of the means of supporting himself and family—which blasts all his prospects

for professional fame and eminence, and leaves a stain on his good name and character,—is an order affecting a substantial right, is a proposition too plain for discussion."

The court thereupon held that—

"Therefore, specific, distinct, special charges should be clearly made, in some form and in some manner, before he [the attorney] is called upon to make his defense. 'This power of removal from the bar is possessed by all. courts which have authority to admit attorneys to practice. It is a power which should only be exercised for the most weighty reasons, such as would render the continuance of the attorney in practice incompatible with a proper respect of the court for itself, or a proper regard for the integrity of the profession; and except where matters occurring in open court, in the presence of the judges, constitute the grounds of its action, the power of the court should never be exercised without notice to the offending party of the grounds of the complaint against him, and affording him ample opportunity of explanation and defense.' " *In re Orton,* 54 Wis. 379, 380, 11 N. W. 584.

Because of the failure of the circuit court to provide for such charges against the attorney, this court reversed the order of the circuit court.

The next case involving disbarment proceedings was ·*Vernon County Bar Asso. v. McKibbin,* 153 Wis. 350, 141 N. W. 283. The court, in an opinion by Mr. Justice MARSHALL, there said:

"Much power in that regard is vested in the court by the constitution, incidental to its possession of judicial power and its duty to enforce, through careful administration, legislative tests of eligibility. . . . To that end it is recognized, in general, that the position of attorney is 'subject to strict oversight and summary power of the court'—*In re Mosness,* 39 Wis. 509,—within the limits of reasonable legislative regulation, and that of judicial discretion where there is no written law on the subject. . . .

"It is unnecessary to discuss, or express an opinion, as to whether prescribing the standard for admission to the bar is a judicial or legislative function. The court has

heretofore spoken on the subject and, whether right or wrong, is immaterial to this case. For myself, I indorse wholly what was said in *In re Mosness,* 39 Wis. 509. It will be found, in my judgment, fully vindicated in the several cases above cited and, in general, by all considerate discussion of the subject.

"There is no question but that the legislature has power to regulate admission to the bar by prescribing a standard therefor, and it is the duty, as it should be the pleasure, of the court to give full effect to all reasonable efforts in that regard. Further, in case of the legislature having, as here, prescribed conditions of eligibility to admission to practice law, which are reasonable, want of such conditions should be regarded as insurmountable.

"The legislature having reasonably provided by the written law that 'all persons who shall have been admitted to practice in the supreme court of any other state or territory, and who shall be residents of this state, may be admitted to practice' here 'upon satisfactory proof of their having been engaged in actual practice in such other state or territory for a period of at least two years prior to application for admission to courts of record of this state,' it cannot be departed from in judicial discretion, as was done in this case in refusing to recall the mistake made in the first instance. The only way that one can satisfy that standard of admission is to come up to it.

". . . Therefore the trial court committed jurisdictional error in admitting respondent."

The court recognized, in its opinion, that the facts presented a hard case, but it felt compelled to follow the statute. In that case, as will be seen from the quotations therefrom, Mr. Justice MARSHALL makes it very plain that the power of the court in such matters is derived from the constitution and not from any inherent power outside the constitution, and that such power as it has is subject to reasonable regulation by the legislature.

Next in order we have the disbarment of Richter by original proceedings in this court. *In re Richter,* 187 Wis. 490, 204 N. W. 492. The charge made against Richter

was that he had violated his statutory oath of office in introducing scandalous matter into a pleading presented in this court on appeal from the circuit court. He was disbarred on the records and his admissions in open court. There it will be noticed that this court recognized the violation of the oath of an attorney prescribed by the legislature as grounds for revoking his license.

In *In re Pierce,* 189 Wis. 441, 207 N. W. 966, this court, by a strict construction of sub. (3), sec. 256.28, Stats. 1925, revoked the license of an attorney to practice in this state, thereby recognizing the absolute power of the legislature to fix the qualifications of attorneys to practice in this state. In this case the construction worked a special hardship, but the court strictly applied the statute nevertheless.

In *State ex rel. Board of Law Examiners v. Podell,* 189 Wis. 457, 207 N. W. 709, this court revoked the license of an attorney to practice in this state for the reason that he had suppressed material information to the Board of Law Examiners. In that case, by implication, this court recognized the statute creating the Board of Law Examiners and their authority thereunder.

In *In re Stolen,* 193 Wis. 602, 214 N. W. 379, 216 N. W. 127, we took original jurisdiction of disbarment proceedings against an attorney. In the opinion it is said: "The power to discipline and disbar attorneys at law is an inherent power of courts." In that case the defense invoked the constitutional provision that judges could be removed only by impeachment, the attorney being a judge of the superior court. The court held that the constitutional provision did not apply, and said:

"We are not now concerned with the question of whether the constitutional provision thus invoked was intended to place any limitations upon the power of this court to discipline the members of its bar. Neither are we called upon to determine whether the legislature may impose any such limitations upon this power (although it must be most em-

phatically understood that we make no such intimation or concession), for the reason that by the act creating the superior court of Dane county it has made no attempt to do so."

Here, for the first time in disbarment proceedings, has the court asserted the inherent power of courts, but that assertion makes no distinction between inherent power of courts and implied power of courts. I had supposed that implied powers were meant; that the assertion was not intended to claim for this court any power outside of the constitution, or that any conflict with the legislature was reserved for future consideration. I think the court's challenge to the legislature's power, by its emphatic language, is outside the case and wholly unnecessary to the decision. I concurred in the decision, but do not feel bound by its dicta. As was the case where Mr. Justice RYAN flung the gauntlet down to the legislature, at the next session after the *Stolen Case, supra,* the act here under consideration was passed.

In the opinion of the court in the instant case, we are cited to other cases claimed to uphold an inherent power of courts outside the constitution. A close analysis, I think, will show that they hold the courts have none other than constitutional powers.

In *In re Janitor of Supreme Court,* 35 Wis. 410, the court emphatically denied that the superintendent of public property had the right to discharge a janitor of this court. But the decision is grounded on a construction of the statutes and not on the power of the legislature. The court said:

"It is a power inherent in every court of record, and especially courts of last resort, to appoint such assistants; and the court itself is to judge of the necessity. This principle is well settled and familiar, and the power so essential to the expedition and proper conducting of judicial business, that it may be looked upon as very doubtful whether the court can be deprived of it. As a power judicial and not

executive or legislative in its nature, and one lodged in a co-ordinate branch of the government separated and independent in its sphere of action from the other branches, it seems to be under the protection of the constitution, and therefore a power which cannot be taken from the court, and given to either the executive or legislative departments, or to any officer of either of those departments."

While the court belabors the superintendent of public property, it goes no farther than to doubt the legislature's right to control the court janitor in the state capitol, and it puts its doubts on a construction of the constitution. In other words, the court, while using the term "inherent power," uses the term as synonymous with implied or incidental power granted the court by the constitution. The court says the power "seems to be under the protection of the constitution."

In *In re Court Room,* 148 Wis. 109, 134 N. W. 490, the court asserted no inherent powers. It asserted constitutional powers, but placed its decision on the act of the legislature providing that the county board, as applied to the facts of that case, shall "appoint some other convenient building at the county seat" for holding court. We should not ignore the ground of the decision to pick out some *obiter dictum* to assert inherent power that was never upheld by the judgment of the court. Reading the whole opinion, it is plain that the court did not base the power outside the constitution, but, on the contrary, based it on a statute, thereby recognizing the power of the legislature to legislate on the subject. The trouble was not with the legislature but with the county board by reason of its failing to obey the law of the legislature.

Again, in *State ex rel. Rodd v. Verage,* 177 Wis. 295, 187 N. W. 830, we find the circuit court punishing a party for contempt, basing his authority therefor on a statute. The governor granted a pardon and attempted to remove a sheriff who refused to recognize the pardon. This court

held the pardon invalid, Justices ESCHWEILER and DOER-FLER dissenting. The question at issue was whether the governor, under his constitutional powers, could pardon and release a prisoner held in jail under an order of the court for civil contempt, to enforce its order. The court says that the power to so punish is inherent in the court, but it does not distinguish between inherent powers and implied powers. A careful reading of the opinion convinces me that the court had no intention of going beyond the constitution to find its power to punish for civil contempt. The supreme court of the United States, in *Michaelson v. U. S.* 266 U. S. 42, 45 Sup. Ct. 18, has since recognized the power of Congress to regulate the trial of contempt proceedings, where the act, if committed, is a crime under either national or state law. Likewise the federal supreme court has since recognized the power of the President to pardon one incarcerated for criminal contempt. The constitutional grant of power to pardon, given to the President, is no broader than the constitutional grant given to the governor.

In *State ex rel. Reynolds v. Circuit Court,* 193 Wis. 132, 214 N. W. 396, where the question of jurisdiction and not of power to punish for contempt arose, the court said:

"The court has the inherent power to do whatever was necessary to conduct its investigation. Among its inherent powers was that of punishing for contempt those who refused to be sworn and to give testimony."

Here no attempt is made to distinguish between inherent powers and implied powers. In that case *In re Rosenberg,* 90 Wis. 581, 63 N. W. 1065, 64 N. W. 299, is cited. The latter case involved an order of the court punishing for contempt in the presence of the circuit court, and the order was sustained as being specifically provided for by a legislative act. The statutes now fully cover contempt proceed-

ings and the punishments therein. Shall we say the legislature is without power in such cases, and claim power for the courts to punish for contempt contrary to statutory regulations?

In *Rubin v. State,* 194 Wis. 207, 216 N. W. 513, this court said:

"If courts have the inherent power to take such judicial action as may be essential to secure the necessary physical surroundings in which to perform their functions, they must of necessity have the inherent power to clear their calendars of champertous actions and to surround themselves with members of the bar who are truly sworn ministers of justice. Without lawyers whose professional conduct demonstrates that they are worthy of their high calling, court rooms and physical plants will never secure the proper administration of justice nor enable courts to perform their important functions in the affairs of men. This power on the part of the courts is not based upon legislative action. It inheres in the nature and constitution of judicial tribunals. Without it courts could not continue to function as the needs of justice may require."

Here, again, the dangerous tendency to follow some language loosely used in an opinion, rather than follow a decision of the court, is apparent. As we have seen, the judgment in *In re Court Room, supra,* to which the court refers, was upheld because of an act of the legislature and not upon any inherent power of the court. The decision in that case directly controverts that part of the opinion quoted from the *Rubin Case,* where it is said: "This power on the part of the courts is not based upon legislative action."

I apprehend that neither the circuit courts nor this court desire to build or maintain court rooms by court orders. They will prefer to rely in the future, as they always have in the past, on legislative action.

The use of the term "inherent" power to mean "implied" power under the constitution is well illustrated by the opin-

ion of Mr. Justice WINSLOW in *State ex rel. Att'y Gen. v. Circuit Court,* 97 Wis. 1, 72 N. W. 193, where he said:

"The power of courts of superior jurisdiction created by the constitution to punish such acts [contempts] is necessarily inherent in such a court, and arises by implication from the very act [constitution] of creating the court."

With this interpretation of inherent power of the court I am in full agreement. The court has by necessary implication from the provisions of the constitution the powers that are *necessary* to function as a court, as such courts were accustomed to function at common law. But Justice WINSLOW continued:

"Doubtless, this power may be regulated, and the manner of its exercise prescribed, by statute, but certainly it cannot be entirely taken away, nor can its efficiency be so impaired or abridged as to leave the court without power to compel the due respect and obedience which is essential to preserve its character as a judicial tribunal."

And to this I also fully subscribe. But the distinction between the inherent power which transcends the constitution and that which flows from the constitution is the difference between despotic power and limited power. Under the constitution such power is limited by necessity for the power. Where the necessity does not exist, the implication does not arise. Where the acts of the legislature reasonably relieve the necessity of seeking power by implication, they should always be held valid. And that is the ground for saying "the power may be regulated" so that the power may be reasonably exercised pursuant to law and not by arbitrary use of power. Such acts of the legislature should always be welcomed by the courts, and usually are welcomed. Seldom does a court flaunt excess power in the face of the legislature or of the people. On the contrary, the courts have generally expressed the desire to recognize acts

of the legislature unless such acts are unconstitutional beyond any doubt. Justice WINSLOW, in the same case, said of the power to punish for contempt:

"It is, perhaps, nearest akin to despotic power of any power existing under our form of government. . . . Being a power which arises and is based upon necessity, it must be measured and limited by the necessity which calls it into existence."

Following these authorities which state the general rule, there should be no doubt of the validity of the statute regulating the admission and disbarment of attorneys in this state. It is in fact a statute in aid of the court's jurisdiction and not a statute to impair it.

To my mind, the law is well settled: that we have a constitutional government and that all the powers of this court are derived from the constitution as therein expressed or necessarily implied; that in the absence of legislation this court has power to reasonably provide for admission to or removal from office, of an attorney of the courts of the state; that the power of the legislature to legislate on the subject of practice of attorneys in this state is limited only by the constitution, and there is nothing in the constitution that prohibits any reasonable legislation in respect thereto; that the legislation in question is reasonable and valid; that such legislation is obligatory on this and all other courts of the state.

The policy of the law is wholly a matter for legislative consideration, so long as the rights of attorneys, possessed under the constitution, are not denied.

The assertion of this inherent power of the court may be the precursor of an enlargement of the "rule-making power" of the court. Power to make the rules of practice is the power to make law. However much we may refine in speech, a general rule laid down by the court, to be obeyed by the people, is a law. Under such a power the court may ignore

the Statutes of 1849 and the Code of Practice of 1858, which we have followed ever since their enactment, and substitute therefor the rules of practice promulgated by this court instead. Admissions to the bar, dismissals from the bar, all regulations of the bar, may be governed by rules of the court. Again women may be denied admission to the bar, or any other condition may be imposed by a majority of seven Justices. Literally hundreds of acts of the legislature may go by the board. I would not exaggerate in saying what may be done. Given the power, and if the assertion of inherent power is correct, logically the court should make all rules governing matters of practice before the court. I think it is a mistake to say, out of deference to the legislature, we will accept legislation and act upon it, when the legislature in fact has no power to enact such legislation. Without such power the act of the legislature is void. Either the legislature has power or it has not; either the legislation is valid or void, and to recognize void legislation and to accept it as authority is to trifle with the fundamentals of the law.

I feel certain that the framers of the constitution never contemplated any inherent power nor did the people who adopted the constitution by their votes. Courts at common law had never had that power free from legislative control. And a free people, appreciating their freedom, never would have surrendered such power. The courts have long tenure of office; they are not, and should not be, in the political vortex; they should have, and do have, the power to interpret the laws, free from public clamor or partisan politics. That is the reason for the confidence reposed in the courts by the people. If ever they lose that confidence it will be by reason of their having too much power thrust upon them, or too much power asserted by them. If courts may assert one power outside the constitution, may they not assert another, and yet another?

I deny inherent power in any public official. It is near kin to arbitrary power, and arbitrary power is a dangerous power to be lodged in any governing body. Kings of England claimed it, struggled to retain it, died for it, and were forced to surrender it. Under arbitrary power the common people were serfs, but these serfs, through centuries of political strife, found their freedom, and the House of Commons is now in the position of greatest power in the Empire. The courts of England do not have power to overrule parliament, and never did have such power. We trace our common law to the English law, and under the common law this court would have no such power. Although English courts do not have the power that courts have in this country, they do not lack in dignity or ability. Their decisions are respected everywhere, not because of inherent power but because of their wisdom.

For more than fifty years this court has recognized the power of the legislature to regulate the practice of attorneys in the courts of this state. The present case is based on the statutes of the state. It is the act of the legislature that created the Board of Bar Examiners and gave this court power to appoint its members, which it did; it was under this same act that charges were preferred by the board; under it we appointed an attorney to prosecute the charges, and a referee to take the testimony, at the expense of the state; under an appropriation of the legislature the funds are provided for the prosecution. Even the oath of an attorney is provided by statute, violation of which we hold is ground for disbarment.

I conceive the law to be that this court has implied power to do whatever is necessary to the performance of our judicial functions. That includes the regulation of practice by attorneys, unless reasonable regulations therefor are made by the legislature. When such regulations are provided by the law-making body, we may construe them, but we are

bound thereby. That has been the practical construction given by this court since 1849, as to the regulations pertaining to the bar and the general practice of the law. Without legislative aid in making appropriations, and in many other respects, the courts would be greatly hampered, if not destroyed. But the three departments of government have worked in much harmony for all the time since the constitution and under the constitution. There is no call whatever for any assertion of arbitrary power by either department, and there never should be any arbitrary assertion of power by either.

We have a constitution given us by a free and sovereign citizenship, under which no officer, and no citizen, need fear that his rights will suffer if the spirit of the constitution is carried forward in the future as it has in the past. That spirit is expressed in the closing section of the bill of rights:

"The blessings of a free government can only be maintained by a firm adherence to justice, moderation, temperance, frugality, and virtue, and by frequent recurrence to fundamental principles."

These fundamental principles are found in the constitution, expressed or implied.