Per Curiam.
 

 Count 1: The state contends that defendant permitted Lawrence Doligalski and Myra Czajkowski to commit perjury when he knew, or ought to have known, that they were doing so, and by so doing assisted them in obstructing justice. We shall not repeat the facts involved in this count. They are fully set forth in the preceding statement. Neither in its brief nor on the oral argument did the state contend that defendant knew Doligalski and Myra Czajkowski committed perjury or false swearing in any of the affidavits made by them or on their adverse-party examinations. But the state argues that the defendant, having knowledge of the facts stated in the affidavit of Auditor Hansen of the insurance company, on which the circuit court for Marathon county issued its order of May 1, 1939, which included the order to show cause returnable on May 8th, should have made some investigation of the facts rather than rely on the truth of the statements made to him by Doligalski and Czajkowski in the preparation of their affidavits made on May 8th and'used at the hearing on the order to show cause. Plaintiff’s position is thus stated in its brief:
 

 “An attorney cannot, without violating his oath, prepare and present to the court an affidavit of a client based solely upon his client’s statement of the facts therein contained, to him, where:
 

 “ (a) ITe has knowledge that his client has previously made sworn statements concerning the same facts ;
 

 “(b) Such statements are matters of public record; '
 

 “ (c) An inspection of such records would disclose that the affidavit is in fact false;
 

 “(d) He makes effort to examine such records.”
 

 We fail to find anything in the record to indicate that defendant had any knowledge that either Doligalski or Myra'
 
 *501
 
 Czajkowski had made false statements concerning the facts as given by them to the defendant in the preparation of their affidavits on May 8th, the truth of which facts was at all times claimed by both parties. Defendant did not learn of his client keeping two sets of books for the purpose of defrauding the insurance company until September 6th, the day following the hearing in the contempt proceedings in the circuit court at Wausau. The insurance company attorneys did not disclose to the defendant or Mr. Barry that they had procured certain records from Washington, D. C, showing that the contractor had falsified its pay-roll records; the existence of such records was not disclosed in the affidavit of Auditor Hansen. Defendant had a perfect right to accept as true the information given him by Doligalski and Czajkowski. The practice of the law would indeed be a difficult task if attorneys were not permitted to rely on the truth of facts given them by their clients.
 

 In support of its contention, the state cites
 
 Steinberg v. Saltzman
 
 (1907), 130 Wis. 419, 428, 110 N. W. 198. In that case the court said:
 

 “The allegations of the complaint on information and belief challenging the validity of appellants’ title upon the ground that no license to sell the realty was granted, it is insisted, are not sufficient to raise such question. That seems to be ruled in appellants’ favor by [citing cases].. Respondents could easily have ascertained whether there was a record of any license to sell the realty, and, if there was none, have alleged the fact positively.”
 

 That case involved an appeal from an order striking out a demurrer. We fail to see its application to the facts in the instant case.
 

 While this is a civil action, triable without a jury (sec. 256.28 (12), Stats.) Count 1 involves moral turpitude. Proof of the allegations must be by clear and satisfactory evidence, or, as said in some cases, by clear, satisfactory, and convincing evidence. See
 
 Ziegler v. Hustisford Farmers’
 
 
 *502
 

 Mut. Ins. Co.
 
 238 Wis. 238, cases cited page 241, 298 N. W. 610.
 

 The trial of the instant action was by a referee who was directed by order of this court †0 try the issues and report his findings of fact and recommendations. Sec. 270.35, Stats., so far as here material, provides :
 

 “The trial by referee shall be conducted in the same manner as a trial by the court. . . . When the reference is to report the facts the report shall have the effect of a special verdict.”
 

 The referee’s findings and recommendations show a careful study and analysis of all the evidence. The findings and recommendations are amply sustained by the evidence. The findings and recommendations of the referee as to Count 1 must be approved.
 

 Count 3: This count charges that defendant oppressively used, perverted, and abused the lawful processes of the courts of Milwaukee county, and by reason thereof overreached and took advantage of numerous poor persons to his advantage. It is further alleged that it was the practice of the defendant in connection with accounts turned over to him for collection to institute proceedings thereon and enter judgment in the courts of Milwaukee county; that upon the entry of judgment defendant, through his employees, would solicit the defendants in said actions to procure loans from the Consolidated Discount Corporation. It is further alleged that the contracts and mortgages used by the Consolidated Discount Corporation were prepared by defendant and provided for the payment of unreasonable, exorbitant, and unfair charges and attorneys’ fees.
 

 The Consolidated Discount Corporation was organized August 21, 1935, and received its charter. Its capital stock was five hundred shares of no-par value. Defendant is secretary and treasurer. Defendant and his wife own fifty per cent of the common capital stock. The corporation did very little business during the years 1935, 1936, and 1937.
 
 *503
 
 On November 16, 1937, the banking department issued a loan license to the corporation, under secs. 115.07 and 115.09, Stats. (The rate of interest prescribed by these sections is substantially less than the chapter licensing small-loan companies.) Loans were primarily made on automobiles; only in rare instances was household furniture taken as collateral. On March 18, 1939, the banking department issued a sales-finance-company license as prescribed by sec. 218.01. From this date on, the Consolidated Discount Corporation became extensively engaged in buying automobile-dealer contracts and loaning to automobile dealers on automobiles on their floor for retail. To finance its business Consolidated Discount Corporation found it necessary to borrow large sums of money. Defendant’s parents at times loaned the company in excess of $25,000. Defendant made' loans to the company of between $9,000 and $10,000. Zimmermann and his relatives made substantial loans. Loans were also procured from the banks. To secure the bank loans the Consolidated Discount Corporation pledged their commercial paper as security and the banks required that such collateral be kept current. The Consolidated Discount Corporation, through its regular employees, looked after its collections, and only turned over to the defendant such accounts as required legal services. Defendant testified that this occurred about fifty times. In view of the volume of business transacted, this would indicate an exceptionally small number of cases of loans made by the Consolidated Discount Corporation which required legal services.
 

 In 1937 when the Consolidated Discount Corporation applied for a license under secs. 115.07 and 115.09, Stats., it submitted to the banking department a copy of its note and mortgage, which contained a provision that the borrower would pay, upon default, an attorney fee of twenty-five per cent of the amount then unpaid. This note and mortgage were approved by the banking department. In 1940' the company voluntarily reduced the attorney fee to fifteen per cent.
 
 *504
 
 In June, 1941, at the request of the banking department the note and mortgage were changed by eliminating the fifteen per cent attorney fee and in place thereof inserting, “together with statutory costs and disbursements.” The recommendation for the elimination of attorney fees in the note and mortgage was made by the banking department to all finance companies operating in the state. Consolidated Discount Corporation immediately complied with the request.
 

 The state’s contention that defendant, through his connection with the Consolidated Discount Corporation and the legal business received from it, collected unreasonable attorney fees on such items of business is not borne out by the record. Exhibit 153 is an itemized statement of fees actually charged or received by defendant on thirty-seven cases investigated by the banking commission. It is interesting to note that the total taxable attorney fees, as per notes, amounted to $2,764.86. The attorney fees actually received amounted to $422.36. The average percentage of attorney fees collected, as to total unpaid balances on all thirty-seven accounts, was 6.16 per cent.
 

 In connection with Count 3, in considering defendant’s connection with the Consolidated Discount Corporation and the legal business which came to him through such connection, we now have no issue of unethical solicitation of business. That charge has been withdrawn. There was nothing unethical in defendant’s organizing .the Consolidated Discount Corporation and in becoming an officer thereof and counsel for the corporation. The company was engaged in legitimate business; its operations were under the supervision of thebanking commission; its interest rates were fixed by law; and the attorney fees were as per terms of note, or as fixed by the court in instances where judgments were entered. This is not a case involving the relationship of attorney and client. The alleged unethical conduct relates to the defendant’s duty as a
 
 *505
 
 lawyer toward certain members of the public with whom he had certain transactions, some of. a business nature, others of a legal nature.
 

 The defendant’s practice was largely of a commercial nature. Claims placed in his hands for collection at times exceeded $500,000. His business prospered and his clients were satisfied with his services. There is no evidence that he at any time improperly used the process of any court in making collections, though in many instances he was obliged to resort to legal action against debtors. It appears that in some instances he advised parties against whom he had taken judgments to apply to the Consolidated Discount Corporation for loans in order that they might satisfy the judgments. In some instances the Consolidated Discount Corporation made such loans on his recommendation, In a number of instances the debtor would borrow from the Consolidated Discount Corporation additional sums for other purposes. Since 1939 the Consolidated Discount Corporation has not accepted as borrowers debtors against whom defendant held judgments for collection. ■ It also appears that prior tO' 1939 the Consolidated Discount Corporation, in refinancing loans, repeated investigation charges. That appears to have been a general practice on the part of finance companies prior to 1940. It was discontinued by all finance companies on the recommendation of the banking department.
 

 In the investigation of the Consolidated Discount Corporation by the banking department in 1939, it found no overcharges on interest rates. It recommended the elimination of an attorney fee based on percentage, that in lieu of any fixed percentage there be inserted the phrase, “together with statutory costs and disbursements.” We find no evidence of any pyramiding, either of attorney fees or charges for investigation, in the renewal of loans, since the investigation by the banking department.
 

 
 *506
 
 In his recommendation as to Count 3, the referee said:
 

 “The evidence on Count 3 is very extensive. Certain cases are gone into at full length with all of the details accompanying them. In view of the nature of Count 3, wide latitude was given to the prosecution and to the defense. Again I must say that after listening to the evidence offered in support of Count 3, and after studying the whole record, together with the briefs submitted by counsel, I am unable to- find the defendant guilty of the improper conduct charged in Count 3, and accordingly, I recommend that the charges in Count 3 be likewise dismissed and the defendant exonerated.”
 

 After careful consideration we are of the view that the referee’s findings upon Count 3 are sustained. We attach no significance to the finding heretofore referred to that defendant consulted the attorney for the Bar Commissioners, and an individual commissioner in regard to the propriety of his practices and that the two attorneys thus consulted declined to express an opinion upon the propriety of the arrangement. We have come to this conclusion for two reasons: 1. Charges were then pending against defendant based upon these very practices and orderly procedure precludes at this stage application for advice either to the board or to its attorney or to an individual commissioner. 2. Neither the attorney for the board nor the commissioner was in a position to express any opinion under these circumstances and refusal so to do must be assumed to have been in response to- this duty of restraint. Had the record disclosed that defendant made a practice of refinancing items taken by him for collection with the finance company which he largely controlled with the effect and for the purpose of getting fees from the collection of the original item and also for the collection of the note executed to the discount company, an extremely questionable practice would have been disclosed. Tt appears, however, that considered in relation to- the bulk and volume of business there were comparatively few instances where such a criticism could
 
 *507
 
 be made of defendant’s practices and we are of the view that whatever the vice of the practice, the referee could, upon the evidence conclude that defendant did not habitually or even intentionally indulge in the practices and that it was his purpose in good faith to satisfy all ethical canons in connection with his practice. We have no occasion therefore further to comment on the practices criticized because we appreciate that a variety of circumstances may vary the conclusions reached in any particular instance as to the ethical quality of an attorney’s conduct in respect of them. The findings and recommendations of the referee are amply sustained by the evidence and must be approved and confirmed. An order may be entered dismissing the complaint.