FRICK, Respondent, v. HOWARD, Receiver, Appellant.

*February 3—March 6, 1964.*

For the appellant there was a brief by *Goldenberg & Weber,* attorneys, and *Samuel Goldenberg* of counsel, all of Milwaukee, and oral argument by *Samuel Goldenberg.*

For the respondent there was a brief by *Pommerening & Pommerening,* attorneys, and *Glen E. Pommerening* of counsel, all of Milwaukee, and oral argument by *Glen E. Pommerening.*

BEILFUSS, J. The issues are:

1. Did Preston, as a promoter, breach a fiduciary duty to the corporation?

2. Can the defense of want of consideration of the original note securing the assigned mortgage be asserted in an action to foreclose the mortgage where the replacement note was nonnegotiable upon its face?

3. Does a receiver of a corporation under an assignment for benefit of creditors have the right to assert a defense in an action to foreclose a mortgage given by the corporation?

*Did Preston, as a promoter, breach a fiduciary duty to the corporation?* It appears without dispute that Preston was the organizer and promoter of the Pan American Motel, Inc.

He entered into the contract to purchase land for $240,000 on January 24, 1958. The terms were,—$5,000 down payment, $65,000 at the closing of the sale and purchase-money mortgage back in the amount of $170,000. He borrowed the $5,000 down payment from one Marohl. He organized the corporation April 1, 1958, and was its sole stockholder until September 3, 1958. After successfully bringing an action on the contract to purchase, he obtained title to the land on August 29, 1958. To pay for the land he withdrew at least $61,000 of the $65,000 closing payment from the corporation and gave the mortgage for $170,000. Three days later, September 1, 1958, the corporation offered him $350,000 for the land. The offer was accepted and the corporation paid Preston $70,000 by cancellation of his debt of $35,000 to the corporation, issuing 35 shares of its stock to him, assuming the $170,000 mortgage, and giving him a note and mortgage for $110,000. The offer was signed by Preston as seller and Frank J. Mack for the corporation. At the time the offer to purchase was made by the corporation Preston was, as far as the record reveals, the sole stockholder and completely dominated the affairs of the corporation. There was a board of directors consisting of Preston and two others but the record does not show they owned any stock or that they were in any way independent of Preston. On April 1, 1959, the note of $110,000 and mortgage were signed by Preston as president of the corporation and by Frank J. Mack as secretary payable to Preston and his wife.

The trial court found that Preston committed a fraud upon the corporation but that the transaction was not secret.

The fact that the transaction was not secret does not in all instances relieve a promoter of his fiduciary obligation to the corporation.

"The promoters may deal with the corporation, but they must deal fairly, the burden of proof of fairness being on them. When they deal with the corporation, it must have independent directors; and the promoters cannot also be directors or dominate them as representatives of the other adversely interested parties.

"Perfect candor, full disclosure, good faith, in fact, the utmost good faith, and the strictest honesty are required of promoters, and their dealings must be open and fair, or without undue advantage taken.

"It is the duty of the promoters to retain in their hands the property which is to constitute corporate assets until the corporation is formed, to cause it to be formed within a reasonable time, and then to turn over to it the assets so held. . . .

"As a result of the fiduciary relation or relation of trust and confidence sustained by a promoter, an unfair advantage taken or secret profit gained thereby is a fraud." 1 Fletcher, Cyc. Corp. (perm. ed.), pp. 730–733, secs. 192, 193.

"CONDITIONS REQUISITE TO VALID SALE.—A promoter cannot act as both seller and buyer. Hence, where he seeks to sell property to the corporation, he must, if he wishes to retain his profit, provide the corporation with an independent board of directors in no wise under his control and make a full disclosure to the corporation through them, or make a full disclosure of all material facts to each original subscriber for stock in the corporation, or procure a ratification of the sale, after disclosure of its circumstances, by the completely established corporation." 13 Am. Jur., Corporations, p. 257, sec. 118.

"From the foregoing we deduce this: If one or more persons acquire property, intending to promote the organization of a corporation to purchase it from them at a profit

to themselves and effect such purpose, limiting the membership to interested parties till the transaction is completed between them and the corporation, intending thereafter to cause the balance of the capital stock to be sold to outsiders, they being kept in ignorance of the true nature of such transaction, and effecting such intent, they are guilty of actionable fraud upon the corporation and responsible to it for the gains made. In such circumstances, in the making of the contract between the corporation and its agents, it is mere fiction as to its prospective members by original subscription. Since it has no one to stand for it as an adverse party in the transaction, no meeting of adverse minds, essential to a binding contract, occurs. The corporation is deceived, in that advantage is taken of its incapacity to protect itself, as to the interests of prospective memberships by the original taking of its stock.

"Applying the foregoing to the situation found to exist all who were concerned in the transaction of buying the land at one price to turn it over to the corporation to be formed at a much greater one, and to induce others to come into the corporation in ignorance of the facts, contributing the actual capital necessary to enable them to fully accomplish their purpose, became liable to refund their profits to the corporation, which liability was enforcible in this action, unless prior to its commencement it was extinguished by the six-year statute of limitations." *Pietsch v. Milbrath* (1905), 123 Wis. 647, 658, 101 N. W. 388, 102 N. W. 342.

It is clear that at the time of the sale of the land to the corporation, and the execution of the note and mortgage, that the corporation had no independent board of directors. The actions of the corporation were completely dominated by Preston. The transaction to sell the land held for a very short period of time was controlled by Preston both as buyer and seller. This was not an agreement between an independent buyer and seller dealing at arm's length. Preston, as an individual selling the property, had a personal financial interest to obtain the highest price available; Preston as the *alter ego* of Pan American Motel, Inc., had a financial

interest to purchase the property at the lowest price available. There could be no meeting of the minds.

The fact that the land may or may not have been worth more than $240,000 cannot override Preston's fiduciary obligation as a promoter of the corporation. In this instance where he completely dominated the corporation at the time of the transaction it was his fiduciary obligation to give the corporation the benefit of his bargain, if it was one. If Preston had provided the corporation with a board of directors who could have acted independently and at arm's length, the situation might have been different. For Preston to obtain a profit of $110,000 for himself under the circumstances herein is unconscionable and a violation of his fiduciary obligation and as such a fraud upon the corporation.

That the transaction constituted a fraud on creditors, existing and subsequent, is all the more apparent when it is considered that Preston attempted to elevate himself to the position of a secured creditor by the note and mortgage of April 1, 1959. If the transaction had been fair and above-board the best that Preston could have claimed was a contribution to capital because of the top-heavy debt structure already existing. We, therefore, hold there was no valid consideration for the note and mortgage of April 1, 1959, in the amount of $110,000 and that the corporation, subsequent stockholders, creditors, or the receiver for their benefit can assert this defense.

Frick, the assignee of Preston, contends that the land-sale transaction was subsequently ratified by the corporation and, therefore, the defense of constructive fraud by the promoter is no longer available. The burden of proof to show ratification and to show that it was the act of an independent board of directors was upon Preston's assignee. He has not met this burden. In any event the creditors cannot be bound by a ratification in which they had no voice.

*Can the defense of want of consideration of the original note securing the assigned mortgage be asserted in an action to foreclose the mortgage where the replacement note was nonnegotiable upon its face?* The plaintiff takes no issue with the finding by the court that the note assigned to him by Preston was nonnegotiable but contends that he was a holder for value without notice of infirmities.

The mortgage is in the face amount of $110,000, and dated April 1, 1959. It provides that it secures a note of even date from Pan American Motel, Inc., to Preston and payments to be made according to the conditions of the note. The mortgage does not set forth any of the conditions of the note, the rate of interest, amount and time of payments, nor the maturity date.

The note of February 28, 1961, of $145,000 and the mortgage were assigned to the plaintiff in December of 1961.

The trial court found that the $110,000 note was lost or misplaced and the $145,000 note was given to replace the original note.

The testimony of Preston does not support this finding. Preston was not able to produce the note at the trial but did testify he believed he had the note in his possession at the time he made the assignment to the plaintiff.[1]

Whether the note was or was not in fact lost at the time of assignment is not controlling. Preston testified it was a

---

[1] "*Q*. When you made an assignment of the payments, was there also an assignment given to Mr. Frick of the $110,000 note that you can't seem to locate now? *A*. No.

"*Q*. Was the $110,000 note in your possession at that time when you made the assignment to Mr. Frick? *A*. I believe so.

" . . .

"*Q*. Was the $110,000 note in your possession at that time, Mr. Preston?

"The Court: He also answered that. Go ahead, answer it again so that he will remember.

"*A*. I believe it was in my possession on that day."

replacement note and it is agreed that the note upon its face is nonnegotiable.

The mortgage stated it was to secure the note of even date (April 1, 1959). It makes no reference to any other note or obligation. The assignment to plaintiff assigns the mortgage "together with the note and indebtedness therein mentioned." The complaint had attached to it a copy of the mortgage and the note of 1961. No allegation was made that the 1961 note was substituted for the note of 1959.

The mortgage secured the note of 1959. In order to obtain a judgment of foreclosure the plaintiff was required to prove the terms of the 1959 note and the default of those terms. The terms of the 1959 note were not proven except that Preston testified that there was a default on the 1959 note and that the 1961 note was substituted for it.

Touching upon the whole broad question of fraud, it is significant that the increase of the note from $110,000 to $145,000 was $35,000—the amount Preston claims to have invested in the corporation, first as a loan and later as a stock purchase.

The foreclosure of the mortgage is a proceeding in equity. The plaintiff, Frick, received an assignment of a mortgage which upon its face provided it was secured by a note described in the mortgage. The mortgage provided it was secured by a note of even date. The note that he did receive was not of even date and was by terms upon its face nonnegotiable. He paid $72,500 for a note of $145,000. Under these facts Frick had the constructive notice of the infirmities of the original note of 1959. He was not a *bona fide* holder for value of the note which the mortgage secured. Equity will not bar the defense of want of the consideration for the original debt.

*Does a receiver of a corporation under an assignment for benefit of creditors have the right to assert a defense in an action to foreclose a mortgage given by the corporation?* We

have heretofore determined that the $110,000 profit by Preston constituted a promoter's fraud upon the corporation and, therefore, there was no consideration for the $110,000 note. The persons most affected by the fraud on the corporation, if permitted, would be the subsequent stockholders and creditors.

The obligation of receiver is to protect the interest of the creditors. Sec. 128.19, Stats., provides:

"TITLE TO PROPERTY. (1) The receiver or assignee upon his qualification shall be vested by operation of law with the title of the debtor as of the date of the filing of the petition or assignment hereunder, except so far as it is property which is exempt, including

" . . .

"(2) The receiver or assignee may avoid any transfer by the debtor of his property which any creditor might have avoided and may recover the property so transferred or its value from the person to whom it was transferred unless he was a bona fide holder for value prior to the filing of the petition or assignment hereunder."

By virtue of this statute the receiver has the title that the corporation had to its property and may avoid any transfer which any creditor may have avoided unless the transfer was to a *bona fide* holder for value prior to the filing of the petition. Inasmuch as we have held that Frick was not a *bona fide* holder for value and that there was no consideration for the note of $110,000, the receiver may resist the foreclosure and assert the defense.

We do not decide whether or not Frick has a claim as a general creditor for part of the $145,000 note for the reason that the issue has not been presented to us.

*By the Court.*—Judgment reversed, with directions to dismiss the complaint.