STATE, Plaintiff, v. PRESTON, Defendant.*

*March 1—April 9, 1968.*

---

* Motion for rehearing denied, without costs, on June 4, 1968.

584

For the plaintiff there was a brief and oral argument by *Rudolph P. Regez* of Monroe, counsel for the Board of State Bar Commissioners.

For the defendant there was a brief by *Kersten & McKinnon* of Milwaukee, and oral argument by *Charles J. Kersten.*

PER CURIAM. Michael D. Preston is forty-nine years of age, a resident of Wauwatosa, Wisconsin, and has practiced law in Milwaukee since 1946. He was graduated from Marquette University Law School in 1943, and was admitted to practice law in Wisconsin in that year.

He is the father of three children, ages twenty-four, twenty and sixteen, and has three grandchildren.

He served in the United States Navy from 1943 through 1946, when he was honorably discharged.

The serious character of the alleged misconduct of the defendant can appropriately be described by reviewing each count and the findings of the referee thereon.

*Count I.*

Between January 24, 1958, and April 1, 1959, the defendant purchased certain real estate in Milwaukee for the sum of $240,000, organized a corporation, and offered to sell the real estate to the corporation for the sum of $350,000 at a time when he was the sole stockholder of the corporation. The difference in the purchase price, *i.e.*, $110,000, was to consist of a mortgage and note from the corporation to defendant and his wife. The initial purchase of the real estate and its subsequent sale to the corporation produced several other financial and stock transactions between the defendant and the corporation. The gravity of the $110,000 mortgage transaction came into full focus when the corporation ultimately faced financial difficulties. *See Frick v. Howard* (1964), 23 Wis. 2d 86, 126 N. W. 2d 619. Defendant refuses to admit there was anything unprofessional in this conduct and asserts that the profit was justified because of his efforts prior to the sale and subsequent acts which resulted in a loss to him. He also contends that the mortgage was to provide a buffer or some measure of security in the event he became liable for any corporation indebtedness which he personally guaranteed.

The referee found that the $110,000 profit by the defendant constituted a promoter's fraud upon the corporation.

*Count II.*

This count arises out of a mortgage foreclosure proceeding against defendant's residence. During the course of the foreclosure proceedings, the defendant accepted service of various pleadings and processes on behalf of himself and his wife. Ultimately, his wife was actually served with the notice of sale at which time the defendant appeared specially on her behalf and objected to the

manner in which prior processes and pleadings in the proceeding had been made upon his wife. The gravamen of the actions of the defendant lies in the fact that they ultimately produced an appeal to this court and delayed the orderly culmination of the mortgage foreclosure proceedings by approximately one year. See *Howard v. Preston* (1966), 30 Wis. 2d 663, 142 N. W. 2d 178.

His attitude toward this situation is expressed by the following admission during the trial of this proceeding:

" 'I had no intention to assist my bitter rivals in many cases that we had pending.' "

The referee found that the defendant, as an officer of the court, disregarded his duty to the court and that he took undue and unprofessional advantage of the plaintiff in the foreclosure action.

### Count IV.

The situation presented in this count evolves from a real estate transaction which took place in 1964.

The defendant represented a relative who was the seller. He negotiated and handled the sale of the real estate to a hospital. He represented to the seller that the sale price of the real estate was $55,000. In the closing of the transaction with the seller a spurious closing statement of unidentified origin was used which reflected the sale price to be $55,000.

The defendant represented to the hospital that the sale price of the real estate was $60,000, which was the amount the hospital actually paid. He further represented to the hospital that the sellers would not pay him a fee for his efforts in negotiating the sale. He indicated his fee would be $1,500 in addition to the sale price, and the hospital agreed to pay this fee. Eventually, upon learning the details of the transaction, the hospital declined to pay the $1,500 fee.

When the seller learned of the variance he became so concerned he engaged an attorney, contacted a hospital official and others. However, when he testified at the trial he attempted to show he was satisfied with the conduct of the defendant.

The referee found that the actions of the defendant constituted unprofessional conduct.

### Count V.

The background of this count is a divorce action. Loraine Hatch, a client of the defendant, was granted a divorce in the circuit court for Waukesha county on September 30, 1963.

It primarily concerns overreaching, although other serious matters are involved.

The fees and disbursements charged by the defendant were approximately $11,000. They were paid by moneys received from his client, her husband, and a substantial portion of the property settlement his client was to receive in the amount of $7,500.

He represented to his client that the trial judge had told him his charges were satisfactory. At the trial of this matter, the trial judge denied having made such a statement and further testified that a reasonable fee would have been approximately $4,000. The fees of the attorney for the husband were $3,600.

The referee found that a check in the amount of $8,293.85 ($7,500 plus interest and fees) issued by the clerk of court to the wife was obtained by the defendant without the approval of the wife; that the check carried the alleged endorsement of the wife; that the endorsement was not that of the wife; and that the wife never authorized anyone to endorse it for her.

The defendant insisted the signature was genuine and produced a handwriting expert in an endeavor to prove its authenticity as against another handwriting expert produced by the plaintiff who testified that the signature was not that of the wife.

Further the defendant commingled the sum of $8,293.85 with his own funds without rendering an accounting therefor.

As to Count V, the referee found that the conduct of the defendant was unprofessional.

The hearing on this matter consumed nine days, the transcript of the testimony exceeds 1300 pages and over 100 exhibits were offered and received in evidence.

We have carefully considered the entire record. Clearly, on the basis of the evidence presented before the referee, his findings are not against the great weight and clear preponderance of the evidence, and we adopt the same. *State v. Roggensack* (1963), 19 Wis. 2d 38, 44, 119 N. W. 2d 412.

A substantial number of letters in support of the defendant's good character were presented to this court. A question of procedure arises in the presentation of these communications in that they were not before the referee at the time of his deliberations. However, in this particular case we have given them full consideration.

It is difficult to fully comprehend the hardship which the unprofessional conduct of the defendant has wrought upon a multitude of people during the last several years. It far transcends the difficulties that now confront the defendant and encompasses his family, other individuals including his clients, his fellow practitioners and the courts of this state. His activities presently under review are all predicated upon his professional standing. We deem it significant that at no time has the defendant evidenced any recognition of unprofessional conduct, but, on the contrary, he has consistently made a determined effort to justify his conduct.

Language seems weak indeed when we attempt to express an opinion as to conduct such as that engaged in by the defendant. Ever since the decision in the case of *Ex parte Wall* (1882), 107 U. S. 265, 2 Sup. Ct. 569, 27 L. Ed. 552, courts have expressed the view that

the revocation of a license of an attorney is not for the purpose of punishment but to protect the public and the courts from those who are unfit to be charged with the responsibilities of such office.

Any disposition of this case which might be construed as a condonation of the defendant's actions would be scarcely less culpable than the actions themselves.

The conclusion we reach imperatively demands the revocation of the defendant's license.

The responsibilities of a lawyer are well stated by Mr. Justice OWEN in *In re Stolen* (1927), 193 Wis. 602, 613, 214 N. W. 379, 216 N. W. 127:

". . . One's morality or lack of morality is revealed by general conduct. One may lack morality in a great many ways. Where this lack of morality has no relation to, and does not affect, his duties and responsibilities as an attorney at law, the delinquencies are generally overlooked by the courts. But where there is lacking honesty, probity, integrity, and fidelity to trusts reposed in him, it matters not whether the lack of such virtues is revealed in transactions with clients, in the conduct of lawsuits, or any other business dealings or relations. These qualities are highly essential on the part of those who are to exercise the privileges and responsibilities of members of the bar. When the lack of them becomes apparent, no matter what the character of the deal or transaction that may furnish the evidence, it becomes the duty of the court to purge its roster of an unreliable member. . . ."

It is ordered and adjudged, that the license granted to Michael D. Preston to practice law in this state be and the same is hereby revoked and annulled for due cause and his name removed from the roll of attorneys of this court; that the State Bar of Wisconsin notify the courts of record of this state of this order by sending each a copy thereof; that the defendant pay one-half the costs and expenses of this proceeding, which shall include fees and disbursements of the referee, attorney for the plaintiff, court reporter and printing, but not to exceed a maximum of $5,000.

The following memorandum was filed June 28, 1968:

PER CURIAM (*on motion for rehearing*). While we deny rehearing on the merits, the brief of the defendant raises several points that we deem merit clarification in that they are relevant generally to disbarment and disciplinary proceedings in this court.

The defendant's brief is premised upon the misconception that this court reviews the findings of the referee and applies an evidentiary test to determine whether the referee's findings are supported by the proper quantum of evidence. This is not correct.

A disciplinary proceeding is brought as an original action in this court, and the function of the referee is that of a special master appointed to conduct a hearing under the jurisdiction of this court. While the recommendations of the referee are given consideration, we look to the record and transcript to determine whether the facts apparent therein warrant some form of discipline. To evidence revealed in the record, we apply what this court has referred to (*Madison v. Geier* (1965), 27 Wis. 2d 687, 135 N. W. 2d 761) as the middle burden of proof.

As long ago as 1882 in *In re Orton,* 54 Wis. 379, 386, 11 N. W. 584, we stated that disciplinary action arising out of conduct related to a transgression of the criminal law "should be established by clear and satisfactory evidence, and cannot rest in doubtful and uncertain inferences."

The same rule was followed in *In re O* (1889), 73 Wis. 602, 42 N. W. 221. The burden of proof required was more recently set forth in *State v. Treis* (1944), 245 Wis. 479, 489, 15 N. W. 2d 309, wherein we said, "While this is a civil action, triable without a jury . . . . Proof of the allegations must be by clear and satisfactory evidence."

While the language used by the referee in the instant case indicated that he relied upon a preponderance of the evidence in making his findings, each of his findings was

scrutinized by this court on the basis of the evidence of record, and the conclusions of this court are those based upon proof of the allegations by clear, satisfactory, and convincing evidence. Any statement appearing in the body of the opinion giving the impression that a lesser burden of proof was required by this court in making its own determination is erroneous and is hereby modified.

The defendant on rehearing also complains that the referee, by concluding that the determination in *Frick v. Howard* (1964), 23 Wis. 2d 86, 126 N. W. 2d 619, was res judicata, deprived the defendant of his constitutional right of due process, since he was not a party to that case. However, the defendant overlooks his stipulation that the record in *Frick v. Howard* was available to the referee as evidence in the instant proceedings.

The defendant was given every opportunity to refute any of the inferences that might have arisen from the record in that case. The referee's statement also makes it clear that he did not rely on the judgment in *Frick* to make his finding. He stated that his conclusion was based on his own study of the factual and legal situation after nine days of hearing. He merely said that his own independent study resulted in conclusions that were not contrary to those reached by this court in *Frick v. Howard*. Moreover, as stated above, this court in considering a disciplinary matter, looks to the evidence *ab initio* and makes its independent conclusions, which in this case resulted in findings identical with those made by the referee.

Nor do we find merit in the contention of the defendant that the charges against him should have been limited to those that come within the purview of sec. 256.29 (2), Stats. While certain types of professional misconduct warranting disciplinary action are included therein, the statute does not limit the power of this court to inquire into other proper charges relative to the misconduct of a lawyer. The defendant's contention was disposed of in *State v. Roggensack* (1963), 19 Wis. 2d 38, 119 N. W. 2d

412; *State v. Horan* (1963), 21 Wis. 2d 66, 123 N. W. 2d 488; *State v. Cannon* (1928), 196 Wis. 534, 221 N. W. 603.

The defendant also urges that this court is authorized to impose costs only if the proceeding results in a temporary suspension of license under sec. 256.28 (13) (b), Stats. He correctly states that sec. 256.28 (13) (a), referring to the absolute revocation of a license, is silent on the question of costs. We consider, however, that the section specifically relating to costs and fees, sec. 256.28 (14), authorizes that, "The supreme court shall tax the costs including the witnesses', reporter's, clerk's, sheriff's, referee's and other officers' fees." In addition, sec. 256.28 (15) provides:

"The reasonable costs of disbarment proceedings conducted under the usual practice, other than that specially provided for in this section, shall be taxed, paid, adjudged and collected in the same manner as herein prescribed."

We are satisfied that these two subsections are ample authority for the taxation of costs against the defendant. These subsections, however, do not authorize the taxing of the attorney's fees. The mandate herein is modified to eliminate therefrom the phrase, "attorney for the plaintiff." Inasmuch as this court previously determined that a proper assessment of the costs against the defendant would be the sum of $5,000, and the costs exclusive of attorney's fees are substantially in excess of that figure, we reaffirm that portion of the mandate assessing costs in the sum of $5,000.

The rehearing is denied.