STATE, Plaintiff, v. STUMPF, Defendant.

*No. State 79. Argued January 5, 1972.—Decided February 3, 1972.*
(Also reported in 193 N. W. 2d 842.)

For the plaintiff there was a brief and oral argument by *Rudolph P. Regez* of Monroe, counsel for the Board of State Bar Commissioners.

For the defendant there was a brief and oral argument by *Ellis R. Herbon* of Milwaukee.

PER CURIAM. A complaint by the Board of State Bar Commissioners alleges that the defendant John Stumpf's failure to comply with sec. 3, Rule 10 of the Rules of the State Bar of Wisconsin, which deals with procedures to be followed by district grievance committees of the state bar, constitutes unprofessional conduct. The complaint was filed with this court on August 1, 1970, and served on the defendant, together with an order to answer, on August 6, 1970. The Honorable HARRY V. CARLSON was appointed as referee to hear the matter, make findings of fact and recommendations.

The matter was heard on March 8, 1971, and the referee filed his findings of fact and recommendations on July 12, 1971.

Judge CARLSON found that "the defendant's failure to comply with the requests and directions of the Grievance Committee was not a deliberate failure as required by Section 3, Rule 10 and that discipline should not be imposed." He recommended "that the complaint be dismissed and the defendant be admonished to use greater diligence to promptly comply with the requests and directions of a State Bar Grievance Committee."

The issue before us is whether the defendant's failure to comply with the grievance committee's requests and directions to answer a complaint made to the committee by a client, and his failure to appear at a grievance committee hearing constitute unprofessional conduct which requires discipline. Encompassed within this issue is the question of whether his conduct was deliberate or wilful as set forth in sec. 3, Rule 10, State Bar Rules.

The rule (sec. 3, Rule 10) provides:

*"Committee procedure.* The work of the committee shall be carried on under the supervisory control of the Board of Governors. The committee shall meet on call of the chairman or vice chairman; a majority of the members shall constitute a quorum, except that committee chairman or vice chairman may designate a

subcommittee for preliminary investigations, hearings and preparation of a report and recommendations for action by the entire committee; and each committee member shall perform such duties in any case as may be delegated to him by the chairman or vice chairman. The committee may also utilize in any investigation the services of investigators and counsel provided by the Board of Governors.

"Whenever it appears, upon preliminary consideration of a complaint, that the facts do not support a charge of misconduct and do not warrant disciplinary action, the committee may dismiss the complaint without proceeding further, but in that event shall notify the complainant and the secretary of the State Bar accordingly. If it appears upon such preliminary consideration that the complaint may have merit and is worthy of a further investigation, the committee shall cause the complaint to be reduced to writing, and also to be signed by the complainant if practicable. A copy shall forthwith be sent by certified mail to, or personally served upon, the person complained of, herein called the 'respondent.' It shall be the respondent's duty to submit to the committee within fifteen days after the date of mailing such complaint his written answer thereto, containing a full statement of the material facts in relation to the acts of misconduct alleged in the complaint; and it shall be the respondent's duty also, if required by the committee to do so, to appear in person before the committee and answer oral or written interrogatories concerning the acts of misconduct alleged in the complaint; and any deliberate failure on the part of the respondent to submit to the committee his written answer to a complaint, or to appear before the committee and answer interrogatories when requested by the committee to do so, and any willful misrepresentation, concealment of or failure or refusal to produce material facts in relation to the matter complained of, shall be grounds for disciplinary action. Before the investigation is concluded in any case, the respondent shall be afforded an opportunity to appear before the committee and to present evidence on his behalf.

" . . .

"If after investigation in any case the committee finds that the facts pertaining to the matter complained of do

not merit disciplinary action, it shall file a written report to that effect and shall notify the complainant, the respondent and the secretary of the State Bar that the complaint has been dismissed. If after investigation in any case the committee by a two-thirds vote concludes that although the facts pertaining to the matter complained of do not merit disciplinary action, the respondent merits admonition, it shall file a written report to that effect and shall notify the complainant and the secretary of the State Bar that the respondent merits admonition by the State Bar for the circumstances outlined in the report, and thereupon the president, in the name of the State Bar, upon the request of said committee, shall notify the respondent and deliver such written admonition and there shall be no further proceedings. If after investigation in any case the committee concludes that the facts warrant a complaint by the State Bar Commissioners under applicable provisions of the Wisconsin Statutes, the committee shall make a report of its proceedings, including a summary of the material facts and the recommendations of the committee, and such report shall be filed with the State Bar Commissioners and a copy shall be filed with the secretary of the State Bar."

The evidence adduced in a disciplinary proceeding involving an attorney is reviewed de novo by this court to determine if the attorney should be disciplined. *State v. Eisenberg* (1970), 48 Wis. 2d 364, 371, 180 N. W. 2d 529.

In *State v. Preston* (1968), 38 Wis. 2d 582, 588c, 157 N. W. 2d 615, 159 N. W. 2d 684, this court declared:

"A disciplinary proceeding is brought as an original action in this court, and the function of the referee is that of a special master appointed to conduct a hearing under the jurisdiction of this court. While the recommendations of the referee are given consideration, we look to the record and transcript to determine whether the facts apparent therein warrant some form of discipline. To evidence revealed in the record, we apply what this court has referred to (*Madison v. Geier* (1965), 27 Wis. 2d 687, 135 N. W. 2d 761) as the middle burden of proof."

The burden of proof carried by the state is that the allegations must be proved by clear and satisfactory evidence. *State v. Eisenberg, supra,* at page 371; *State v. Treis* (1944), 245 Wis. 479, 489, 15 N. W. 2d 309.

The defendant, John Stumpf, is a forty-eight-year-old attorney who resides in Milwaukee, Wisconsin. He graduated from Marquette Law School in March of 1948. He practiced law in Milwaukee as a member of the firm of Stumpf and Gorectke from 1949 to 1958. Since 1958 he has practiced law as a sole practitioner.

On October 1, 1969, a client of Stumpf's, Billy Hatcher, complained to District Grievance Committee No. 4 of the State Bar of Wisconsin (hereinafter grievance committee) concerning Stumpf's alleged dilatory behavior in connection with a divorce action wherein Stumpf represented Hatcher. Stumpf received a partial retainer from Hatcher in May of 1968, and the balance thereafter in installments. The defendant did not commence the action.

Attorney Robert E. Cook, one of the members of the grievance committee, called the defendant by telephone on October 23, 1969, and advised him of Hatcher's complaint. The defendant did nothing further. As a consequence, on December 22, 1969, a complaint under Rule 10 of the State Bar Rules was issued against Stumpf by the grievance committee. The complaint was mailed to Stumpf on December 29, 1969, by certified mail. He received the letter on January 3, 1970. In a letter accompanying the complaint Stumpf was informed that it was his duty to submit, within fifteen days, a written answer containing a statement of the material facts in relation to the acts of misconduct alleged by Hatcher's complaint. The defendant did not respond to either the complaint or the letter.

On February 12, 1970, the grievance committee again wrote Stumpf by certified mail and told him that he was required to answer no later than February 16, 1970,

and that failure to answer would be considered an act of misconduct. Stumpf did not receive the letter until February 17, 1970, one day after the February 16, 1970, deadline. However, he did not in any way respond to the letter.

On March 10, 1970, the grievance committee again wrote to Stumpf by certified mail. He did not open this letter (it was opened at the hearing before the referee), although he thought it pertained to the complaint of the grievance committee. The letter warned that it was his duty to submit a written answer. It further stated that a hearing would be held on the amended complaint at 12 p. m., April 6, 1970, at the Milwaukee Bar Center. The amended complaint, in addition to the original charges, stated that Stumpf had violated his duty under Rule 10 of the State Bar Rules to answer the original complaint.

The grievance committee met at the scheduled time on April 6, 1970. Stumpf did not appear nor did he file a written report.

At the meeting on April 6, 1970, the grievance committee issued its findings and a recommendation, and referred the matter to the Board of State Bar Commissioners (hereinafter the board). The board considered the matter. Upon consideration of the record the board issued the complaint against Stumpf, alleging that he had violated his duty under Rule 10 of the State Bar Rules to appear before the grievance committee.

On January 27, 1970, some three weeks after Stumpf had received the first written complaint from the grievance committee, Hatcher came into Stumpf's office to discuss the divorce matter. It became apparent that there had been some misunderstanding and lack of communication between Hatcher and Stumpf. Hatcher was in military service and spent some of the time in Viet Nam. Hatcher's wife, the prospective defendant in

the divorce action, had moved from New Orleans and her address was unknown and unavailable to Stumpf. All of the differences between Hatcher and Stumpf were satisfactorily adjusted and Hatcher gave Stumpf an affidavit whereby he withdrew any complaints he may have had against Stumpf. The defendant Stumpf did not advise the grievance committee of his meeting with Hatcher nor of the affidavit. It was not until after the complaint by the Board of State Bar Commissioners had been served in August of 1970, and the defendant had retained counsel, that he in any way advised either the grievance committee or the bar commissioners that the matter with Hatcher had been adjusted.

The defendant conducts his business as a sole practitioner in the now so-called "core" area of Milwaukee. He does not have a secretary. His clients, in the main, are people of very limited income. His practice is general and he serves clients in a broad spectrum of legal problems. He has a good reputation both as a lawyer and a citizen, and serves his clients well. In his twenty years of practice there have not been any complaints of an unethetical nature against him. He works long hours and earns a modest income. He is married and has three children in their late teens. His wife acts as a part-time secretary at home but she has a serious illness.

Stumpf testified that he knew the complaint of the grievance committee concerning the Hatcher matter was serious. He stated that he did not respond because of the press of his clients' business, because he was humiliated and because he did not want his family or clients to know about it, and that he laid it aside with the intention of answering it later. He also stated that when the Hatcher matter was adjusted he thought that was the end of it. If he did have such thoughts the grievance committee communications to him in February

and March should have convinced him such was not the case.

The crucial part of sec. 3, Rule 10, State Bar Rules, insofar as this action is concerned, is as follows:

". . . and any deliberate failure on the part of the respondent to submit to the committee his written answer to a complaint, or to appear before the committee and answer interrogatories when requested by the committee to do so, and any willful misrepresentation, concealment of or failure or refusal to produce material facts in relation to the matter complained of, shall be grounds for disciplinary action. . . ."

The referee found that the failures of the defendant as recited above were not deliberate or wilful. With citations [1] to support his conclusion, the referee determined that "deliberate" meant a decision made after careful thought and the weighing of various considerations. While this definition is appropriate in some given legal situations, we do not believe it can be so limited in the context in which it appears in sec. 3, Rule 10, State Bar Rules, *supra*.

In order for the bar grievance procedure, as set forth in sec. 3, Rule 10, State Bar Rules, to be at all effective, there must be some effort to comply with the commands of the rule. It is our opinion that "deliberate failure" as used in sec. 3, Rule 10 is broad enough to include an inexcusable neglect or conscious disregard in making appropriate response after knowledge of the nature of the complaint.

We do not believe John Stumpf is an unethical practitioner insofar as his clients are concerned, but we do believe there was a deliberate failure to respond to the complaints of the duly constituted grievance committee. We must insist upon compliance with the rule for a meaningful administration of disciplinary rules.

---

[1] *Craft v. State* (1866), 3 Kan. 450. *Also see:* 11A Words and Phrases.

We conclude that the complaint shall stand. Further, it is ordered and adjudged that the defendant be and he hereby is admonished to use greater diligence to promptly comply with requests or directions of a state bar grievance committee made pursuant to sec. 3, Rule 10 of the State Bar Rules.