In the MATTER OF the ESTATE OF Lilian M. KOHLMETZ, Deceased:

William J. KOHLMETZ, Appellant-Cross-Respondent,

v.

August FABYAN, Jr., Successor Personal Representative, Respondent-Cross-Appellant,

David M. QUALE, Respondent.

Court of Appeals

*No. 82–391. Argued February 11, 1983.—Decided May 11, 1983.* (Also reported in 336 N.W.2d 176.)

For the appellant-cross-respondent there was a brief submitted by *Seymour Pikofsky* of *Franks & Pikofsky, S.C.* of Milwaukee. Oral argument by *Michael Flaherty*.

For the respondent-cross-appellant there was a brief submitted by *August E. Fabyan, Jr.* of *Haight & Fabyan* of Hartland. Oral argument by *August E. Fabyan, Jr.*

For the respondent there was a brief submitted by *David M. Quale* of *Prosser, Wiedabach & Quale, S.C.* of Milwaukee. Oral argument by *David M. Quale*.

Before Scott, C.J., Voss, P.J., and Brown, J.

BROWN, J. William J. Kohlmetz was an attorney for the personal representative of an estate. He appeals a determination of attorney's fees in the amount of only $4,000 instead of the requested sum of $20,000. Because the record shows the estate was not handled expeditiously and economically, the trial court did not abuse its discretion in making such award. The successor personal representative cross-appeals, claiming Kohlmetz deserves no fee. We affirm the trial court on this issue as well. Finally, Kohlmetz challenges an award of $1,800 from the estate to one of the creditor's attorneys. We hold that he has no standing to raise the issue.

Kohlmetz' aunt, Lilian M. Kohlmetz, died on November 19, 1968. Her will named Arthur W. Schroeder, a nephew, as personal representative. Schroeder hired the appellant as his attorney. As of the date of oral arguments on this appeal, more than fourteen years after Lilian's death, the estate had still not been closed.

Kohlmetz claims the delay is not his fault. He points out that the deceased was an attorney by profession. At her death, many files remained open. He had to work on closing the files for two reasons. First, by closing some files, he would obtain fees from the deceased's clients, which fees would become an asset to the estate. Second, some fees had been collected by the deceased in advance. To avoid claims against the estate for fees received but work uncompleted, he had to close those files. Winding up his aunt's legal business took a great deal of time. He says he spent 124 hours in this endeavor over a period of years.

He also claims the estate could not be closed until all the real estate was sold. He cites two instances which, he argues, justify the delay. There was a piece of property in Germantown that had been appraised at $71,000. Yet, no offer to purchase even came close to the appraised figure. Kohlmetz held off selling the property

for a lesser sum because realization of the appraised value, or close to it, would assure solvency of the estate. Finally, due to a desire to close the estate, Kohlmetz sold the property for $40,000.

The other instance involving real estate concerned a twenty-five foot lot in Milwaukee. Kohlmetz felt that an attempt to sell this lot, standing by itself, would be futile because the lot was too small for a potential buyer to build upon. He hoped to enter an agreement with an adjacent owner, who also owned twenty-five feet. Together, the properties would be salable, Kohlmetz reasoned. The other owner died in the interim, however, and the two estates apparently did not or could not reach agreement. On August 4, 1974, Arthur Schroeder was removed as personal representative because the estate was not being handled in an expeditious manner. Kohlmetz asserts that since he was, therefore, no longer the attorney for the personal representative of record, he could do no more regarding the twenty-five foot lot. Therefore, the estate could not be closed, even though the lot was abandoned in 1975. He concludes that these reasons justify the delay in closing this estate.

Our reading of the record discloses, however, numerous instances of uneconomical and unexpeditious handling of the estate by the personal representative, through Kohlmetz. As a result, the property was tied up longer than necessary, depriving those entitled to the full measure of fruits and benefits. First, there were numerous instances of claimants getting paid out of turn, resulting in an improper division of the assets. One example was a payment of $1,367 on an ancillary claim that all agreed should never have been paid. Kohlmetz' defense to this and other out-of-turn payments was that he thought the Germantown property was going to make the estate solvent when sold. Therefore, he saw no need to follow established procedure.

Second, the deceased had a loan outstanding with the Layton State Bank. Stock was pledged as collateral. The stock garnered dividends of between $6,300 and $6,400. The bank took the stocks and applied them against their loan after having a special administrator appointed in 1975 so its claim could be heard. They also took the dividends, however, without any objection by the estate. The bank's legal right to the dividends is debatable, but the estate did nothing to stop it. Kohlmetz' defense was that because the Layton bank action took place in 1975, Arthur Schroeder was not the personal representative at the time, and, therefore, he was powerless to do anything about it.

Kohlmetz' answer does not explain why the Layton State Bank loan could not have been taken care of prior to 1973 when he could have done something about it. Kohlmetz' answer to this very question, posed during trial court testimony, was that some of the stock certificates were lost. Replacements had to be ordered. When asked why this would have taken such a long time so as to delay an early determination of the Layton claim, Kohlmetz admitted that: "We didn't get off our rear end and get replacements for those until the bitter end." Kohlmetz' acknowledged dilatory action in not closing this matter in 1973 directly contributed to the estate's acquiescence in the bank's taking of the stock dividends in 1975.

Third, although Kohlmetz claims the estate could not have been closed in 1973 because the twenty-five foot lot had not been sold, Kohlmetz does not explain why abandonment was any less feasible in 1973 than in 1975. The adjacent landowner had died prior to 1973, and Kohlmetz, himself, intimated that his plan for joinder of the properties was rather dormant after the neighbor's death.

The fact is that the estate could have been closed as early as 1973. It was not. The trial court received what was probably the real reason for Kohlmetz' conduct when

he confessed that he did not close the estate in 1973 because the assets would then be dissipated by the creditors. By leaving the estate dormant, however,

> there was inertia. We knew if we came back to court, everything had to go lickety-split. I mean, the money was all working. . . . There was no out go in expenses, so the estate technically grew by the earnings on the investments.

Why would an attorney let an estate lie dormant so that expenses would be held to nothing and the investments would increase the assets of the estate? Kohlmetz supplied the answer himself by admitting that the claims and the conventional administration expenses, if expeditiously paid, would exceed the amount of assets on hand. Kohlmetz then confessed, "I'm trying to make myself whole, I guess, for the lack of revenue that came in from this thing." The trial court could come to no other conclusion but that Kohlmetz purposely let the estate lie dormant because the expenses exceeded the assets, and, since it looked as though he would not get paid for all the time he had already put into the estate, he did not wish to do any further work in closing it. Rather, he was satisfied to let the estate slowly grow in assets due to the estate's investments. We agree with the trial court's assessment.

The trial court also could not understand why the estate was not closed soon after October 24, 1978, when Arthur Schroeder was again appointed personal representative and Kohlmetz again became Schroeder's attorney. The reappointment was made at the request of creditors in an effort to get the estate finally closed. We cannot understand why, either. The real estate problems had all been taken care of, and the Layton State Bank matter was long over. This was Kohlmetz' excuse when asked to take care of the inheritance tax and to get a waiver because of the estate insolvency:

[A]dministration expenses [are] going to make, will bankrupt the estate . . .; under the constitution, Article XIII of the Federal Constitution, it says involuntary servitude is disbanded. You're throwing up to me you may disallow any fees, so I have been working all these years for nothing, if you are going to disallow fees. So I should put more work in at your order, and knowing I'm not going to get paid for it?

The trial court felt, based on Kohlmetz' statements, that the estate was not going to be closed diligently. Schroeder was, therefore, removed as personal representative on January 18, 1982, and Kohlmetz was removed as attorney of record for the personal representative.

The record justifies the trial court's action. The policy of the law favors expeditious and economical estate administration so that property will not be tied up longer than necessary and those entitled to the property will not be deprived of the full measure of its control, fruits and benefits. 1 J. MacDonald, E. Berman & C. Hallinan, *Wisconsin Probate Law and Practice* § 2.2 (8th ed. 1982). In setting attorney compensation, the probate court is justified in first determining whether the estate was handled efficiently. In *Estate of Tierney*, 70 Wis. 2d 438, 444, 234 N.W.2d 357, 360 (1975), the supreme court acknowledged that efficiency was one criterion relevant to that determination, although in that case no problem of that type was found. The court stated:

Although the attorney involved in this litigation is, according to the record, a highly skilled and competent practitioner, the services required were not of a particularly challenging nature. On the other hand, there is nothing to show that the estate was not handled expeditiously, and there is no evidence that any assets were wasted or allowed to dissipate in the course of the proceedings. The record indicates that the probate proceedings were well-handled.

Kohlmetz claims that nonexpeditiousness cannot be a criterion unless there is first a finding of inexcusable neglect and bad faith on the part of the lawyer. He reasons that *Will of Rice,* 150 Wis. 401, 465, 136 N.W. 956, 981 (1912), commands this. He quotes *Rice* as saying:

The negligence . . . must needs be very manifest,—so great to at least amount to bad faith, something like what is called gross negligence—such utter disregard of duty as to amount to constructive intent to wrongly dissipate the funds.

Kohlmetz leaves out, by ellipsis, and limiting effect of the quote. The exact quote reads:

The negligence in disbursing money, *as executor or administrator, to make him personally liable,* must needs be very manifest,—so great to at least amount to bad faith, . . . . [Emphasis added.]

We construe the *Rice* case as having nothing to do with laying a standard by which an attorney's nonexpeditious conduct is to be assessed. Rather, *Rice* concerned the personal liability of executors to repay wronged heirs.

Kohlmetz also cites *Will of Leonard,* 202 Wis. 117, 128, 230 N.W. 715, 719 (1930). He claims the *Leonard* case left no doubt that the *Rice* quotation was applicable to attorneys. We think *Leonard* is important to the decision in this case, but it works against Kohlmetz rather than for him. *Leonard* held that allowances for services were in the discretion of the trial court. Upon finding the lawyer in that case, Imgram, "derelict in his duty," the trial judge was warranted in taking the dereliction into account and in reducing or rejecting fees because of that dereliction. Bad faith and gross and unexcusable negligence were not considered a condition precedent to lowering or rejecting fees. The *Leonard* court cautioned, however, that when bad faith and the like *are* found, then

the trial court's discretion is severely limited and fees should be *rejected. Id.*

We accept the *Leonard* rationale as controlling. That is, the threshold question is whether an attorney has been "derelict in his duty." If such a finding is made, then the trial judge has the discretion to reject or lower attorney fees on that basis. If a lawyer has done more than just being derelict, or if he or she has receded to bad faith, the court must have a strong basis to avoid denial of fees altogether.

We take note that, since *Leonard,* the supreme court has had occasion to address the nonexpeditious conduct of attorneys within the context of attorney disciplinary proceedings. The strong tenor of these cases, cited in the margin, is to set a standard similar to "dereliction of duty."[1] The common thread of these cases is the discussion of indifference to present legal duty or forgetfulness of legal obligations such that other persons might be affected. *See State v. Wildermuth,* 34 Wis. 2d 235, 148 N.W.2d 656 (1967). No finding of dishonesty, intentional bad faith or the like is necessary. Rather, it is enough if the unexpeditious conduct was caused without bona fide justification or motivation.

---

[1] *Matter of Hegner,* 106 Wis. 2d 763, 317 N.W.2d 503 (1982); *Matter of Solberg,* 106 Wis. 2d 242, 316 N.W.2d 347 (1982); *Matter of Karas,* 105 Wis. 2d 503, 314 N.W.2d 319 (1982); *Matter of Srenaski,* 105 Wis. 2d 597, 314 N.W.2d 359 (1982); *Matter of Swetz,* 105 Wis. 2d 500, 314 N.W.2d 318 (1982); *Matter of Laubenheimer,* 104 Wis. 2d 524, 312 N.W.2d 377 (1981); *Matter of Norlin,* 104 Wis. 2d 117, 310 N.W.2d 789 (1981); *Matter of Lindberg,* 103 Wis. 2d 309, 307 N.W.2d 301 (1981); *Matter of Marine,* 82 Wis. 2d 612, 264 N.W.2d 290 (1978); *Matter of Hamm,* 79 Wis. 2d 1, 255 N.W.2d 308 (1977); *State v. Wildermuth,* 76 Wis. 2d 476, 251 N.W.2d 779 (1977); *State v. Weber,* 55 Wis. 2d 548, 200 N.W.2d 577 (1972); *State v. Stumpf,* 53 Wis. 2d 690, 193 N.W.2d 842 (1972).

In fact, more recent cases involving attorneys suggest that the modern meaning of "inexcusable neglect" is the same or similar to "dereliction of duty." In determining whether excusable neglect exists in a particular case, the supreme court has defined "excusable neglect" as that neglect which might have been the act of a reasonably prudent person. *Charolais Breeding Ranches, Ltd. v. Wiegel,* 92 Wis. 2d 498, 512–13, 285 N.W.2d 720, 727 (1979). In *Charolais,* the attorneys came to trial without witnesses and apparently unprepared to either establish their client's cause of action or defend against the counterclaims of the opposing party. *Id.* In short, the lawyers were derelict in their duty. The court held inexcusable negligence existed.

We conclude, therefore, that whether it be called "dereliction of duty," as in *Leonard,* or "inexcusable neglect," as in *Wildermuth* and *Charolais,* the standard is the same. A finding of "gross negligence such as to amount to bad faith" is not necessary. A finding of failure to do what a reasonably prudent lawyer would do is all that is necessary. This may be shown by evidence of action or inaction without justification, showing forgetfulness of legal obligation or indifference to legal duty.

The trial court made a finding that no bad faith existed. It then made a finding that inexcusable neglect did exist. Our reading of the trial judge's findings is that he had in mind the correct meaning of the term "inexcusable neglect."

Just the facts as stated in this opinion show overwhelming evidence in the record to support a finding of inexcusable negligence. The inaction by Kohlmetz and his reasons therefore may well be a violation of SCR 20.32,[2]

---

[2] SCR 20.32 states as follows:
Failing to act competently
A lawyer may not:

which prohibits a lawyer from neglecting a legal matter entrusted to him. Kohlmetz also failed to comply with court orders, contrary to sec. 757.29, Stats.,[3] when he refused to file an inventory, although being told to do so, and refused to file a waiver for inheritance tax purposes when ordered to do so by the court. The facts show an indifference to legal duty. As such, the trial court was

(1) Handle a legal matter which the lawyer knows or should know that he or she is not competent to handle, without associating with a lawyer who is competent to handle it.

(2) Handle a legal matter without preparation adequate in the circumstances.

(3) Neglect a legal matter entrusted to the lawyer.

[3] Section 757.29, Stats., states:

(1) ATTORNEY'S OATH. Each person admitted to practice as a member of the bar of any court of this state shall subscribe the roll of attorneys to be kept by the clerk and shall in open court take an oath or affirmation of the tenor following, to wit: I do solemnly swear:

I will support the constitution of the United States and the constitution of the state of Wisconsin;

I will maintain the respect due to courts of justice and judicial officers;

I will not counsel or maintain any suit or proceeding which shall appear to me to be unjust, or any defense, except such as I believe to be honestly debatable under the law of the land;

I will employ, for the purpose of maintaining the causes confided to me, such means only as are consistent with truth and honor, and will never seek to mislead the judge or jury by any artifice or false statement of fact or law;

I will maintain the confidence and preserve inviolate the secrets of my client and will accept no compensation in connection with my client's business except from my client or with my client's knowledge and approval;

I will abstain from all offensive personality and advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which I am charged;

I will never reject, from any consideration personal to myself, the cause of the defenseless or oppressed, or delay any person's cause for lucre or malice. So help me God.

correct in ruling that Kohlmetz' actions constituted inexcusable negligence.

Kohlmetz claims that the trial court abused its discretion in awarding only $4,000 in attorney's fees. In view of the finding of inexcusable neglect, we believe the award was more than adequate. The standard of review with regard to attorney's fees is that we are not bound by the trial court's assessment of the reasonable value of attorney's fees. *State v. DeKeyser*, 29 Wis. 2d 132, 139, 138 N.W.2d 129, 132 (1965). Nonetheless, we agree with what the trial court did. The court did not allow any compensation for the 388 hours allegedly spent by Kohlmetz in handling the probate of the estate. He did, however, allow $4,000 for 120 of the 124 hours of work Kohlmetz did in order to close his aunt's law practice. Most of the clients had paid their fees to Lilian Kohlmetz in advance and would have filed claims for return of the fees since the legal services had not been performed. It was the obligation of the personal representative to prevent such a happening. As the trial court stated, Kohlmetz' actions saved the estate from having to hire outside counsel to wind up the legal affairs or paying the clients to have an outside attorney complete it. For this reason, the trial court's surcharge was proper, and we deny the successor personal representative's claim for a greater surcharge.

Kohlmetz also objects to the award of $1,800 out of the estate to David M. Quale, the lawyer for Seaboard Surety Company, one of the deceased's creditors. It was Quale who moved the court to get Schroeder reappointed so that the estate would no longer lie dormant. It was he who kept close watch to make sure that the probate of the estate moved forward. The trial court rewarded Quale, and Kohlmetz claims the trial court has no such authority.

Although it is an interesting question, we will not reach it because Kohlmetz has no standing. He was not a party in the estate and, therefore, is not an interested person. Kohlmetz is the former attorney for the estate and that is all. A party excluded from administration of an estate uninjured by a court order granting fees and without the support of a complaint from an interested person has no standing to appeal an order of the probate court. *Cf. Carpenter v. United States Fidelity & Guaranty Co.*, 123 Wis. 209, 101 N.W. 404 (1904).[4]

*By the Court.*—Order affirmed.

---

[4] We reject Quale's assertion that Kohlmetz' appeal is frivolous.